In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-2205

TANYA COOPER-SCHUT,

*Plaintiff-Appellant,*

*v.*

VISTEON AUTOMOTIVE SYSTEMS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 01 C 899— **Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 23, 2004—DECIDED MARCH 17, 2004

Before BAUER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Tanya Cooper-Schut, an African-American woman, began working for Visteon on May 22, 2000. She was employed as a supervisor in the FS-10 Compressor Department. During her brief employment with the company she says she was the victim of numerous hostile encounters with various co-workers. Cooper-Schut resigned on September 11, 2000. Some of her complaints are mild in nature, some are serious. The following is a list of those complaints:

Cooper-Schut says that when she began working at the plant her supervisors created a hostile environment. She claims that her supervisors discussed rumors about the assistant plant superintendent having an affair with another African-American female employee. The rumors were discussed in Cooper-Schut's presence during meetings. The discussions were derogatory toward the woman involved in the affair.[1]

In another incident, in May of 2000, a co-worker told Cooper-Schut that Cooper-Schut's group leader, John Warren had ridiculed her by trying to rhyme her name with the word "slut." Cooper-Schut was not present when Warren said this. Later, Warren (an African-American man) informed Cooper-Schut that "black women will take you to the cleaners"—a comment made in reference to his recent divorce.

Cooper-Schut also complains of an incident where another group leader, Greg Bonwell, reprimanded her in front of other employees for a work-related incident. She believes that Bonwell went out of his way to criticize her for an issue unrelated to the topic of the meeting, and that he was unprofessional in "screaming" at her. Cooper-Schut does not believe he treats male employees in the same way.

Cooper-Schut also had trouble with her subordinates. She complains that Douglas Fields, a white man who worked below her, told her that "I don't like women, and women don't like me." Shortly thereafter, Fields left a business card on her desk with the name of a shop where he purchased guns. Cooper-Schut felt this was done to intimidate her. She felt that he was openly hostile to her, and insubordinate and she did not feel physically safe in his presence. On September 8, Cooper-Schut and Fields had a confrontation

---

[1]  Warren stated, "If she wasn't fucking Jefferson she wouldn't be working here anymore." Appellant's Br. at 4.

over a job assignment she gave to him. Cooper-Schut attended a meeting with Fields to discuss the incident, Fields said during the meeting she was, "shaking [her] head and acting like Sha-nay-nay." Cooper-Schut believes this was racially derogatory and was intended to portray her as a "stereotypical black female who is . . . ignorant." (Appellant's Br. at 11.)

Cooper-Schut also had difficulty with another subordinate employee, James Augustine. She encountered hostility from him when she confronted him regarding his absence from work and refused to accept his excuse of medical problems. At this time Augustine became visibly irate and pushed a heavy industrial basket toward Cooper-Schut, exclaiming that he was "sick of this shit." This behavior she says intimidated her.

Another employee, Will Taylor, told Cooper-Schut that a competition existed among employees at the plant to see who would be first to have sex with her.

In addition to these smaller hostilities, Cooper-Schut reports some serious and disturbing incidents at Visteon. She says that on August 15, 2000 she was injured by a falling tray and was taken to the hospital to receive medical attention for an injury to her ankle. Initially, Cooper-Schut believed the tray fell as a result of an accident that occurred while a maintenance employee was clearing a jam on a conveyor belt; later she believed that because of the size of the tray and the way the trays were stacked it could not have accidently fallen. She believes that it was intentionally thrown at her from above by another employee, Ted Couch. Cooper-Schut was told by other workers that Couch later remarked: "that nigger should not have been in the way." On her first day back following the injury, a second tray was thrown at Cooper-Schut but did not hit her.

On September 6, 2000 Cooper-Schut found a derogatory caricature taped to the refrigerator in her work area. The caricature was of her and was accompanied by the following

phrases: "Please show me how to run my dept. the right way," "Nigger Bitch," and "I need help!" Cooper-Schut immediately reported this to Donald Vincent, the Human Resources Manager at the plant. The next day Vincent directed John Donner to conduct an investigation of the incident. Donner had a new employee, Jennifer Stewart, interview the various employees who worked directly with Cooper-Schut. Cooper-Schut told Stewart that she feared for her safety; Stewart told her she could not guarantee Cooper-Schut's safety at the plant. Cooper-Schut then resigned.

After the district court granted summary judgment for Visteon, Cooper-Schut filed this appeal. Cooper-Schut takes issue with 1) the district court's determination that she did not establish a claim for a Title VII violation, and 2) the district court's treatment of some evidence. We discuss these below.

## *Title VII Claims*

We review the district court's grant of defendant's motion for summary judgment de novo. *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003). In doing so, we consider all evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2. There are several ways to frame a Title VII claim; we consider Cooper-Schut's claims of a hostile work environment and constructive discharge.

*Hostile Work Environment*

An employer violates Title VII if it is responsible for a "hostile work environment." *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). A hostile environment is one that is "permeated with discriminatory intimidation, ridicule and insult." *Shanoff v. Ill. Dept. of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001). In order to state a claim under Title VII for a hostile work environment, a plaintiff must be able to demonstrate that: "1) he was subject to unwelcome harassment; 2) the harassment was based on his race [or sex]; 3) the harassment was severe [or] pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment; and 4) there is basis for employer liability." *Mason*, 233 F.3d at 1043 (7th Cir. 2000).

While we find some of Cooper-Schut's complaints disturbing, we do not find that she stated an actionable hostile work environment claim under Title VII. Although the incidents Cooper-Schut experienced at Visteon may have been "severe or pervasive" enough to rise to an actionable level, there is no basis for employer liability; Visteon responded reasonably on the few occasions when Cooper-Schut alerted it to workplace hostilities that violated Title VII.

Employer liability is evaluated on two levels. First, an employer may be liable if a supervisor is responsible for the harassment. That argument is not raised here. (Appellant's Br. at 35.) Second, an employer may be liable if the harassment is done by a co-worker and the employer is shown to have been negligent in failing to prevent the harassment. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir. 1995). An employer is deemed negligent if it fails to take reasonable steps to discover and remedy harassment. *Id.* In evaluating whether an employer's response was reasonable, we must consider the "gravity of the harassment." *Id.*

The first step in this inquiry is whether the employer was on notice of the harassment.[2] When an employee reports harassment to her employer, the employee must give the employer "enough information to make a reasonable employer think there was some probability that she was being sexually [or racially] harassed." *Zimmerman v. Cook County Sheriff's Dept.*, 96 F.3d 1017, 1019 (7th Cir. 1996); *see also Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1014 (7th Cir. 1997) (noting that an employer cannot be held liable if the employee does not report sexual harassment and the employer would not have reasonably discovered through other channels). As we will discuss below, one of the main failings of Cooper-Schut's reporting (in the incidences she did report[3]) is that the majority of conflicts with co-workers were work-related and did not involve racial or sexual insults, and Cooper-Schut did not report that she believed them to be racially or sexually motivated. While Visteon may have been on notice that she was experiencing friction with her co-workers, it did not have reason to believe the majority of these problems fell under the more serious umbrella of race or sex discrimination.

Although Cooper-Schut began experiencing problems with co-workers as early as May 2000, she did not report these

---

[2] During the relevant time-frame for this case, Visteon had a "Zero Tolerance" policy in force regarding racial and sexual harassment. It posted a notice at the plant to this effect, and told employees who to contact in the event harassment did occur.

[3] Cooper-Schut did not report the following incidents: comments made by her supervisors regarding the affair; Bonwell's unprofessional reprimand of Cooper-Schut in front of other employees; Field's statement: "I don't like women and women don't like me."; Field's leaving the business card of a gun seller on her desk; Warren's comment that "black women will take you to the cleaners"; the competition among employees to have sex with Cooper-Schut; and Couch's statement after the tray incident that "that nigger should not have been in the way."

problems immediately. Her reports to supervisors occurred about a month preceding her resignation. They are as follows: On August 31, 2000 she reported to the Human Resources Manager, Donald Vincent, that she had been told that John Warren had rhymed her last name with "slut." In response Vincent immediately had Henry Morrissey (the Area Manufacturing Manager) interview Warren about the remark. He also interviewed two other employees who were present at that meeting; they denied that he made the remark. Also, Cynthia Holm (the Equal Employment Opportunity Commission) interviewed Warren and three other supervisors. All those interviewed denied that Warren had called Cooper-Schut a slut; because of this, no discipline was implemented. Visteon's response of immediately conducting multiple interviews with the employees involved was a reasonable response, and was not negligent. *See Perry*, 126 F.3d at 1014-15 (holding an employer's response to a complaint of sexual harassment was reasonable when the employer investigated the incident, but the alleged harasser and supervising employee denied that the incident occurred).

Regarding her confrontations with subordinate employee Douglas Fields, Cooper-Schut sought involvement from Visteon on two occasions. On August 11, 2000 she reported an incident involving a hostile confrontation with Fields to her supervisor, Warren. That confrontation was work-related and did not involve racial or sex-based comments. On September 8, Fields again exhibited hostility toward Cooper-Schut; later that day a meeting was held with Warren and union representatives to address the situation. This hostility was again related to work issues, and did not involve race or sex-based comments. During the meeting to discuss the incident Fields did make a comment that Cooper-Schut was acting like "Sha-nay-nay." Cooper-Schut felt this was a derogatory term for African-American women. Cooper-Schut told Warren that she wanted to

discipline Fields. Warren told her to prepare a write-up of the days events to assist in determining discipline—she quit three days later without preparing a write-up. Later, Fields was one of the employees with whom Visteon individually reviewed its zero tolerance policies. We think that Visteon's responses to these reports were reasonable. Aside from the "Sha-nay-nay" comment, these incidents were neither sex- or race-based. With regard to the "Sha-nay-nay" comment, we first note that "Sha-nay-nay" is an ambiguous term.[4] However, Cooper-Schut felt that Fields *meant* it to be racially and sexually derogatory, which, in all fairness, may be true. Cooper-Schut's supervisors tried to follow up with discipline but were hampered by her failure to complete the necessary write-up of the incident. *See Perry*, 126 F.3d at 1015 (finding the "reasonableness" of an employer's response to a complaint of harassment may be affected by the cooperation—or lack thereof—by the complaining employee.). Ultimately, Visteon recognized that Fields was especially hostile toward Cooper-Schut and spoke with him individually about Visteon's adherence to its zero tolerance policy.

Cooper-Schut also reported to Warren an incident on August 22, 2000 involving James Augustine. This incident arose when Cooper-Schut refused to accept Augustine's reason for missing work. Augustine became angry and yelled that he was, "sick of this shit." This incident did not involve racial or sex-based comments; Cooper-Schut did not report that it did.

Cooper-Schut was hit by the tray on August 15, 2000 and had a second tray thrown at her several days later. While Cooper-Schut reported to Donald Vincent that she

---

[4] It is possibly a reference to a female character (Shenehneh Jenkins) played by comedian Martin Lawrence on the TV sitcom "Martin" (1992-1997). *See The Internet Movie Database at* http://www.imdb.com/title/tt0103488/.

believed in both incidents the trays were intentionally thrown at her, she did not tell Vincent that she believed the motivation for throwing the trays was sexual or racial, and Vincent had no reason to suspect they were. Visteon's safety investigation of the incident and counseling of the employee responsible for the trays was a reasonable response.

Finally, on September 6, 2000 Cooper-Schut showed Vincent the offensive caricature she found posted on the refrigerator. This conduct was clearly related to both her race and sex. In response, Cooper-Schut was interviewed that day by Vincent, Morrissey, and Eric Lavalette, a Labor Relations associate, regarding the caricature. The next day Human Resources began a complete investigation. Part of that investigation, interviewing the hourly employees in Cooper-Schut's department, was delegated to a new employee, Jennifer Stewart. In addition to the interviews, Visteon retained a forensics expert to analyze the handwriting on the caricature to determine who made it. Visteon could not determine who was responsible for the picture. Instead of disciplining employees, it reviewed its zero tolerance policy concerning racial and sexual harassment with all employees at the plant. Stewart also met individually with particular employees (Fields, Augustine and Charles Masters—those with whom Cooper-Schut had had specific problems) to review the policy. Cooper-Schut resigned prior to the completion of this investigation. While we lament that such behavior occurred, we find that when Visteon became aware of the problems, it took reasonable actions to remedy the violations.

*Constructive Discharge*

Cooper-Schut also claims that Visteon violated Title VII by constructively discharging her. When a plaintiff seeks to show this through indirect evidence she must employ a

burden-shifting framework. The plaintiff must prove the following prima facie case: "(1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably." *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002). When the "adverse employment action" that the plaintiff complains of is a constructive discharge it is simply a claim that she was forced to quit because the work conditions became unbearable.

It is difficult for a plaintiff to show a constructive discharge. We have noted that "[a]bsent extraordinary conditions, a complaining employee is expected to remain on the job while seeking redress [for Title VII violations]." *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (quoting *Perry*, 126 F.3d at 1015); *see also Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) ("An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged."). In this case, Cooper-Schut's constructive discharge claim fails for two reasons: First, because whatever racial and sexual harassment she experienced was, for the most part, mild. *See Hertzberg v. SRAM Corp.*, 261 F.3d 651, 658 (7th Cir. 2001) (noting that a plaintiff needs to show facts that go beyond an "ordinary" Title VII violation; drawing a distinction between conditions that are "unreasonable"—in which case the employee must continue working—and those that are "intolerable"). Second, Cooper-Schut quit before Visteon had a chance to complete its investigation of the caricature. Case law illustrates that an employee has not acted reasonably if she assumes the employer will fail to protect her without allowing the employer a chance to try. *See Tidwell*, 93 F.3d at 494. For these reasons, Cooper-Schut's constructive discharge claim fails.

*Evidentiary Issues*

Cooper-Schut also challenges the district court's use of several pieces of evidence. We review evidentiary rulings for abuse of discretion. *Hildebrandt v. Ill. Dept. of Nat. Res.*, 347 F.3d 1014, 1040 (7th Cir. 2003). Additionally, we will only reverse if failure to do so would be "inconsistent with substantial justice." *Id.* That is to say, we will reverse the district court's ruling only if it was erroneous, and the error affected the outcome of the case.

Cooper-Schut takes issue with the district court's treatment of three affidavits. According to Federal Rule of Civil Procedure 56(e), "[s]upporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence." A court must not consider parts of an affidavit that fail to meet the standards of Rule 56(e) when considering summary judgment. *Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998). Further, a plaintiff's "conclusory statements, unsupported by the evidence of record, are insufficient to avoid summary judgment." *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

The first affidavit in question is that of William Goings, a maintenance employee. In his affidavit he stated that he informed Visteon management that the letters "KKK" were graffitied around the plant and that plant employees had made racially disparaging remarks; he also stated that he told Cooper-Schut about the graffiti. The district court admitted this testimony only for its effect on Cooper-Schut and not for its relevance to the issue of Visteon's negligence in preventing a hostile work environment. However, Cooper-Schut never claimed to have seen the graffiti or to have complained about it to Visteon, so even if it were accepted unconditionally, this evidence does not go to show that Visteon was negligent in responding to Cooper-Schut's

problems.[5] To the extent that it would have shown Visteon to have been on notice of discriminatory behavior at the plant, Visteon agrees that it knew about the behavior, but states that it was isolated and they responded promptly to the complaints; Cooper-Schut does not offer specific evidence to refute this. For this reason, the district court's treatment of this evidence did not affect the outcome of Visteon's summary judgment motion.

The second piece of evidence in question is Cooper-Schut's affidavit testimony. Cooper-Schut takes issue with the district court's treatment of two parts of the affidavit. First, a portion of Cooper-Schut's affidavit stated that she had been told by another employee that a competition existed among employees at the plant to see who would have sex with Cooper-Schut first. The district court admitted that testimony only for the effect that it had on Cooper-Schut and not for the truth of the matter asserted. Cooper-Schut believes that it is evidence that Visteon should have been on constructive notice of the harassment she suffered. We

---

[5] In *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 812-13 (7th Cir. 2001) we faced a similar situation and explained,

> Read in [Plaintiff's] favor, the evidence demonstrates that Delta neither knew or should have known of the problem before [Plaintiff] complained, and that it took prompt and appropriate remedial action when she did. While it is true that [a supervising employee] was aware before June 7 that several . . . employees had used foul language in the warehouse, and that two female employees had complained to [the supervising employee] about two occasions in which [these] employees had directed inappropriate sexual language or graffiti towards them, none of these incidents involved [Plaintiff] . . . and the only admissible evidence of record shows that Delta addressed both of the latter complaints promptly.

*Id.*

find the district court correctly treated this evidence as hearsay—that is, an out-of-court statement offered for the truth of the matter asserted—and only let it in for the effect that it had on its listener.

Another portion of her affidavit stated that she had requested job location transfers. The district court admitted evidence of one request for a transfer, but not for others, stating that the requests were not supported by specific facts in the record. Even if these transfer requests had been admitted, Cooper-Schut does not allege that she alerted Visteon as to why she was requesting the transfers. Hence, they would not have aided Cooper-Schut in preventing summary judgment for Visteon.

Last, Cooper-Schut believes that the district court, while admitting the affidavit testimony of Lester Van Cleave, did not give it proper weight. In his affidavit Van Cleave (an African-American employee) states that the word "nigger" was written on a cabinet in his work area and Visteon did not take steps to determine who had done it despite the presence of a security camera in the area. Cooper-Schut believes this testimony goes to show that Visteon was aware of racial discrimination at the plant, and the district court judge did not afford the evidence proper weight. First, we note that the district court did admit this evidence. The credibility that the district court assigns evidence is subject to review for abuse of discretion. It does not appear that the district court abused its discretion here. Second, as we noted above, Cooper-Schut does not assert that she was aware of this piece of graffiti so this does not show that Visteon was negligent in addressing her problems. For these reasons, we find there was no district court error.

In light of all the above discussion, we AFFIRM.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*