# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-2733

ANNE B. RACICOT,

                                        *Plaintiff-Appellant,*

        v.

WAL-MART STORES, INC.,

                                        *Defendant-Appellee.*

_____

Appeal from the United States District Court for
the Southern District of Indiana, Evansville Division.
No. 01 C 223—**Richard L. Young**, *Judge.*

_____

ARGUED JANUARY 3, 2005—DECIDED JULY 5, 2005

_____


Before BAUER, EASTERBROOK, and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.*  Anne Racicot appeals the district court's grant of summary judgment to Defendant-Appellee Wal-Mart on her claims of sex discrimination, sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and age harassment and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). For the following reasons, we affirm.

## I. Background

Racicot began working at the Wal-Mart in Jasper, Indiana, in July 1999 as an associate in the seafood department. Racicot's lawsuit stems from incidents involving her co-workers Mike Condra and Dan Simpson. First, Racicot took offense at several workplace comments made by Condra. She claims that he often used foul language in her presence and told her on several occasions that she "shouldn't be working at [her] age." Condra's workplace behavior prompted complaints by Racicot and several other associates, both male and female. Condra was terminated in November 2000 after a customer complained to management that she had overheard Condra call Racicot a "fucking bitch." Racicot did not hear this comment and only learned of it after Condra's termination.

Racicot also complains about Simpson's treatment of her. Specifically, she claims that Simpson regularly yelled at her, called her names like "son of a bitch," cursed in her presence, interfered with her work and vacation schedule, and told her, "if you were younger, you could pick up the boxes when heavy shipments arrived at the store."

Racicot made written and oral complaints to management about Simpson and Condra's conduct, and Store Manager Kathy Horney met with her to discuss her concerns. Racicot also met with District Manager Mike Owens, who reviewed all of her complaints. Racicot specifically complained about Simpson's yelling, poor job performance, and poor customer service.

In November 2000, Racicot was verbally reprimanded for a violation of company policy when she held some discounted meat back from the customer display and later sold the lower-priced meat to her husband during her shift. In December 2000, Racicot was suspected of being involved in mislabeling or underringing seafood. As part of the investigation into this incident, Racicot prepared a written

statement in which she admitted attempting to improperly sell her friend shrimp at a sale price, but claims to have changed her mind at the last minute. Based on this incident and the incident a month earlier involving holding back discounted meat, Horney decided to terminate Racicot. A female associate who is older than Racicot replaced her in the seafood department.

## II. Discussion

We review a district court's grant of summary judgment *de novo*, viewing all facts and reasonable inferences from the record in the light most favorable to the non-moving party. *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

### A. Sex Discrimination

Racicot argues that Wal-Mart discriminated against her on the basis of her sex by interfering with her work schedule on three occasions, thereby denying her vacation time. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

Though her claim is somewhat nebulous, Racicot does not appear to contend that she was terminated because of sex discrimination. With regard to her scheduling complaints, those incidents all took place before April 2000. Racicot filed her charge of discrimination over a year later, on May 21, 2001. Under Title VII, a plaintiff has 300 days from the date of the alleged unlawful employment practice to file a charge with the appropriate federal or state agency; conduct occurring prior to the limitations period cannot form the

basis of a Title VII suit. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999). Racicot's claims would have to be based on conduct that occurred after July 25, 2000. Since this is not the case, the district court correctly ruled that Racicot's allegations are time-barred and properly granted summary judgment.

## B. Sexual Harassment

Racicot also alleges that Condra and Simpson sexually harassed her, thereby creating a hostile working environment, by cursing at her and using vulgar language in her presence. To succeed on her claim, Racicot must establish that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004).

Racicot has not demonstrated that the harassment she experienced was severe or pervasive. A hostile work environment is one that is both objectively and subjectively offensive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). In evaluating the objective offensiveness of a plaintiff's work environment, we consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). In this case, Racicot has described a limited number of incidents that are more reflective of run of the mill uncouth behavior than an atmosphere permeated with discriminatory ridicule and insult. *See Cooper-Schut*, 361 F.3d at 426. Racicot complains that Condra and Simpson used vulgar language in her presence, occasionally cursed at

her, yelled at her, and made isolated comments about older women in the workplace. These incidents, even when taken together, fall short of an objectively offensive work environment. The district court properly granted summary judgment in favor of Wal-Mart on the sexual harassment claim.

## C. Age Harassment

Plaintiff's next claim is that she was harassed on the basis of her age. Again, we note that Racicot does not appear to claim that she was actually terminated due to her age.[1] Instead, she complains that Condra and Simpson harassed her by making comments about the propriety of women working at her age and the fact that she could pick up heavy boxes if she were younger.

This court has assumed, but never decided, that plaintiffs may bring hostile environment claims under the ADEA. *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001); *Halloway v. Milwaukee County*, 180 F.3d 820, 827 (7th Cir. 1999). We need not decide this issue in the instant case because even assuming such a claim to be cognizable, Racicot fails to provide evidence to support such a claim. Condra's and Simpson's isolated comments about Racicot's age were neither severe or pervasive enough to create an objectively hostile work environment. *Bennington*, 275 F.3d at 660. As with Racicot's sexual harassment claim, the statements made by Condra and Simpson are examples of boorish behavior but not actionable age harassment. Accordingly, summary judgment was proper on the age harassment claim.

---

[1] The fact that Racicot was replaced by an associate who is older than she prevents her from establishing a *prima facie* case of age discrimination, regardless.

### D.  Retaliation

Finally, Racicot argues that she was terminated in retaliation for her complaints about Condra and Simpson. An employer may not retaliate against an employee who has complained about discrimination or other employment practices that violate Title VII or the ADEA. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). Since Racicot has no direct evidence of retaliation, she must proceed under the indirect method and establish that: (1) she engaged in statutorily protected activity; (2) she was performing her job according to Wal-Mart's legitimate expectations; (3) despite her satisfactory performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in such protected activity. *Stone v. City of Indianapolis Public Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Racicot has failed to offer any evidence of a similarly situated employee who did not make complaints and was treated more favorably. Moreover, Wal-Mart has articulated a legitimate, nondiscriminatory reason for terminating Racicot. Horney decided to fire Racicot for integrity issues after she was involved in two suspicious incidents involving holding back food or selling it at an improperly discounted price. Since Racicot has failed to establish the fourth prong of the *prima facie* test and Wal-Mart has come forward with a legitimate reason for her termination, summary judgment was properly granted to Wal-Mart on the retaliation claim.

### III.  Conclusion

For the reasons set forth above, we AFFIRM the judgment of the district court in favor of Wal-Mart.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*