UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 31, 2006[*]
Decided June 1, 2006

**Before**

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-4343

| | |
|---|---|
| PAMELA M. SPRAGUE, <br> *Plaintiff-Appellant,* <br><br> *v.* <br><br> MAC'S CONVENIENCE STORES, LLC, <br> *Defendant-Appellee.* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division <br><br> No. 1:03-CV-01532 <br><br> Larry J. McKinney, <br> *Chief Judge.* |

**O R D E R**

Pamela Sprague sued Mac's Convenience Stores, LLC ("Mac's"), alleging that it violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Mac's successfully moved for summary judgment, and Sprague now appeals. We vacate the district court's grant of summary judgment and remand.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* Fed. R. App. P. 34(a)(2).

In 2003, Sprague filed a complaint against Mac's alleging that her supervisor, Beth Edwards, fired her in March 2003 because she did not respond to Edwards's sexual advances. Sprague also claimed that she was subsequently banned from Mac's properties in retaliation for pursuing her harassment suit. The facts detailing her claim, which we review in a light most favorable to Sprague, *see Ballance v. City of Springfield*, 424 F.3d 614, 616 (7th Cir. 2005), are as follows:

Sprague had been a store manager for Mac's since 1997. Up until the few days before she was fired in March 2003 she was a successful manager. She received good reviews from her superiors, numerous bonuses, and several "Store Image Awards." But in January 2003, Edwards became Sprague's supervisor and things began to change as Edwards began to make several "sexual advances" toward Sprague. The most notable of these incidents are: (1) Edwards repeatedly reminded Sprague that Edwards was gay; (2) Edwards stared at Sprague in "a way that was very offensive," and made Sprague uncomfortable; (3) Edwards gestured for Sprague to sit on her lap; (4) Edwards admitted to Sprague that she read Sprague's personal e-mails; and (5) Edwards once brushed her breasts against Sprague's back when walking past her. In February 2003, Sprague told Edwards's supervisor, Mark Kesmodel, that "she was very uncomfortable working for Edwards" and that she was concerned that her "obvious objections" to Edwards's "come-ons" would affect her job performance. Kesmodel assured Sprague that he would talk to Edwards about her behavior. He then arranged for the three to meet and discuss Sprague's concerns, but Edwards quickly turned the conversation to Sprague's criticisms of certain company policies, such as the recently revised policy governing the company uniform. The meeting closed with Edwards telling Sprague to "Turn around, let me see the tag on your pants," in a purported effort to see if she was abiding by the new policy.

On March 4, 2003, Edwards met with Sprague over lunch to deliver her annual performance evaluation. Sprague received a good evaluation and a pay raise. But after Edwards completed the evaluation, she insisted on continuing the lunch for several more hours. During this time, Edwards told Sprague that her domestic partner liked Sprague, and invited Sprague over to their house to swim with them in their swimming pool. Edwards then explained that she wanted to share a hotel room with Sprague during an upcoming company conference. Finally, Edwards told Sprague that she "liked women who do exactly what [she] tells them to do," while looking at Sprague in a way that made Sprague feel uncomfortable. Sprague repeatedly attempted to steer the conversation back to work-related topics in an attempt to reject Edwards's advances.

Edwards became hostile toward Sprague shortly after Sprague's rebuff of Edwards at the extended lunch. For example, when Sprague questioned the efficacy of various store and market operational procedures to corporate officials,

Edwards confronted her, stating that she overstepped her bounds as a store manager.  The situation came to a head on March 12 when Edwards excoriated Sprague over inquiries Sprague made to another store manager about certain managerial decisions the manager made.

In response to this dispute, Sprague told Kesmodel that she had "some problems that are getting out of hand."  Edwards, in contrast, attempted to tender her resignation because she felt she was "reduced to nothing more than a bumbling person unable to accomplish nothing but pacifying [Sprague] on a daily basis."  Kesmodel refused to accept Edwards's resignation, and "told Edwards that the decision was hers.  She could discharge Sprague if she chose."  Edwards then "decided to discharge Sprague" on March 17.  Shortly thereafter, Edwards instructed Mac's employees to call law enforcement if Sprague entered their stores.

The district court granted summary judgment for Mac's because, in its view, "Edwards had no effect on the decision to terminate Sprague's employment," and because she did not show that Edwards's behavior "was severe enough to rise to the level of actionable sexual harassment."  The court also stated that Sprague failed to show that she was retaliated against because she did not demonstrate that she was treated less favorably than other similarly situated employees.  We review a grant of summary judgment de novo, *Bio v. Fed. Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005), and will affirm only if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," *see* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The district court erred in concluding there was insufficient evidence to support Sprague's claim that she suffered sexual harassment that resulted in a tangible employment action.  A plaintiff can prove sexual harassment by showing "a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands."  *Burlington Indus. v. Ellerth*, 524 U.S. 742, 753-54 (1998); *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 692-93 (7th Cir. 2001).  The alleged harasser must be a direct supervisor who has the authority to impose a "tangible employment action" on the plaintiff, *see Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 478 (7th Cir. 2004), such as the power to terminate employment, *see Molnar v. Booth*, 229 F.3d 593, 600 (7th Cir. 2000).  Whenever sexual harassment leads to a tangible employment action, the employer is liable without more, *see Wolf*, 250 F.3d at 1142; *Molnar*, 229 F.3d at 600.

Contrary to the district court's reasoning, Sprague presented evidence that Edwards exercised her authority as a market manager to terminate Sprague's employment: the "Statement of Position" Mac's submitted to the Equal Employment Opportunity Commission that states "Edwards decided to discharge Sprague," and

Edwards's deposition testimony in which she states that she had the authority to terminate store managers prior to 2004. This evidence creates a genuine issue of material fact that the district court could not resolve on summary judgment. *See Quantock v. Shared Marketing Servs., Inc.*, 312 F.3d 899, 904-05 (7th Cir. 2002) (reversing district court's grant of summary judgment because the district court incorrectly concluded that there was no issue of disputed fact whether the alleged harasser was the plaintiff's supervisor); *Haugerud*, 259 F.3d at 693-97 (reversing district court's grant of summary judgment when the district court incorrectly found that there was no issue of disputed fact after inaccurately summarizing plaintiff's numerous claims of sexual harassment).

Moreover, for the remaining elements of her harassment claim, Sprague has presented evidence from which a jury could reasonably infer that Edwards sexually propositioned her and terminated her because of her rejection. Specifically, there is evidence that Edwards repeatedly told Sprague that she was gay, invited Sprague to sit on her lap, brushed her breasts across Sprague, invited Sprague to swim with her and her domestic partner, and share a hotel room together. Moreover, Edwards monitored Sprague's personal e-mails and, after all of this, darkly warned Sprague in the context of a sexually suggestive conversation following her performance review that she "liked women who do exactly what [she] tells them to do." Mac's argues that Edwards's comments do not rise to the level of actionable sexual harassment because they were not "sufficiently severe or pervasive." However, the several cases that Mac's relies on do not address instances where a supervisor made what could be reasonably inferred to be a warning about the employee's job security if she does not submit to the supervisor's sexual advances. Here, Edwards's statement that she "liked women who do exactly what [she] tells them to do" could be seen as constituting such a warning, and when combined with the rest of Edward's actions, creates a reasonable inference that, if accepted by the trier of fact, sexual harassment occurred. *See Cooke v. Stefani Mgmt. Servs.*, 250 F.3d 564, 565-67 (7th Cir. 2001) (upholding jury verdict finding employer liable where gay manager subjected male employee to "sexual propositions, inappropriate touching, and non-verbal gestures of a sexual nature" that the employee considered to be "unwelcome, offensive, and degrading").

However, the district court correctly determined that Sprague failed to show that Edwards or Mac's retaliated against her by banning her from entering Mac's stores. To establish a *prima facie* case of retaliation, Sprague must point to evidence showing that she was treated less favorably than similarly situated employees who did not make complaints. *See Racicot v. Walmart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005) (citing *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002)). At the very least, a similarly situated employee would be another discharged employee who did not pursue a harassment claim and who was not banned from Mac's stores. *See Sartor v. Spherion Corp.*, 388 F.3d 275, 279 (7th Cir.

2004) (stating that similarly situated employees "must be 'directly comparable in all material respects' to the plaintiff") (citation omitted); *see also Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 619 (7th Cir. 2000) (suggesting that, in the context of larger corporations, "similarly situated" employees must be subject to the same decision-maker as the plaintiff). However, beyond making a conclusory claim in her brief that similarly situated employees exist, Sprague points to no evidence in the record of such an employee, and her retaliation claim thus fails as a matter of law. *See Racicot*, 414 F.3d at 678 (citing *Stone*, 281 F.3d at 644).

Accordingly, we VACATE the judgment of the district court on the sexual harassment claim and REMAND for proceedings consistent with this opinion. Each side shall bear its own costs.