

Villanova University Charles Widger School of Law
Villanova University Charles Widger School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-27-2006

# Abraham v. Abington Friends Sch

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4629

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Abraham v. Abington Friends Sch" (2006). *2006 Decisions.* Paper 17.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/17

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4629

ELMER ABRAHAM,
                                    Appellant

v.

ABINGTON FRIENDS SCHOOL

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 04-cv-4232
(Honorable Legrome D. Davis)

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 22, 2006
Before:  SCIRICA, Chief Judge, FUENTES and SMITH, Circuit Judges

(Filed: December 27, 2006 )

OPINION OF THE COURT

PER CURIAM.

    Elmer Abraham appeals the order of the United States District Court for the

Eastern District of Pennsylvania granting summary judgment in favor of the defendant,

Abington Friends School.  We will affirm the District Court's order.

I.

In July 2000 Abraham was hired by the Abington Friends School as a custodian. In September 2004 Abraham filed a complaint against the School alleging age discrimination. According to his complaint, over a period beginning sometime in 2001, Abraham was 1) harassed and criticized by his supervisor because of his age, 2) unfairly sent home and docked pay on two occasions, 3) denied overtime opportunities that went to younger employees, 4) removed from extra work as a security guard, 5) transferred to a less desirable shift, and 6) laid off with others on his new shift. Abraham contends that these actions amounted to discrimination in violation of the federal Age Discrimination in Employment Act (29 U.S.C. § 621) and its state counterpart, the Pennsylvania Human Relations Act. Abraham also claims that he was retaliated against for submitting two complaints to the school and filing an EEOC complaint. Finally, Abraham alleges that the harassment he experienced caused a hostile work environment.[1]

The parties engaged in discovery and both Abraham and the defendants filed motions for summary judgment. In September 2005, the District Court granted Abington's motion for summary judgment, denying Abraham's motion as moot. Abraham now appeals.

---

[1] Abraham litigates this matter pro se before this Court. Abraham was represented by counsel at the time the complaint was filed; approximately two months after filing the complaint, Abraham's counsel petitioned the court to withdraw, citing Abraham's repeated revocations of settlement agreement terms to which he had previously agreed, and Abraham's distrust of his advice as counsel. The District Court granted the motion.

II.

This Court has jurisdiction under 28 U.S.C. § 1291, and we exercise plenary review over the decision to grant summary judgment. See Torres v. Fauver, 292 F.3d 141, 145 (3d Cir. 2002). We must determine whether the record, when viewed in the light most favorable to Abraham, shows that there is no genuine issue of material fact and that the defendant was entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56.

Under the ADEA, it is "unlawful for an employer to . . . discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail, a plaintiff must show that his age actually played a role in the employer's decision-making process and that it had a determinative influence on the outcome. See Reeves v. Sanderson Plumbing, 530 U.S. 133, 141 (2000). Discrimination under the Act is analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005). A plaintiff has the initial burden of establishing a *prima facie* case of discrimination, then the burden shifts to the defendant to assert a legitimate, non-discriminatory reason for the adverse employment decision. Where the defendant gives sufficient reason, the plaintiff must show that the reason was pretextual.

We agree with the District Court that the record shows Abington's legitimate, non-discriminatory reasons for its conduct in relation to Abraham. First, Abraham was not

3

singled out when he was terminated, but rather was laid off as part of the July 2004 "outsourcing" of the entire custodial department that was the result of the School's effort to save money. Six out of the eight employees discharged were less than 40 years old. Second, the record reveals that Abraham lost security guard responsibilities because of an incident where Abraham, in his capacity as a guard, closed the school's theater before students and teachers were finished with their activities, forcing students to wait outside in the rain for rides home. Third, Abraham was sent home early from work as part of his supervisor's efforts to discipline and/or motivate him after he performed unsatisfactorily on two occasions. The record does not support Abraham's assertion that he was not paid on the occasions he was sent home. Fourth, Abraham's loss of overtime was attributable to the regular seasonal decrease in demand for custodial overtime work due to school being out of session during the summer months, and gym classes being held outside (leaving the gymnasium largely unused) during early Fall. Fifth, the record shows that the changing of Abraham's shifts (first from night to day, then back from day to night) was due to his marginal performance: the first was done so his supervisor could monitor him more closely, and the second because the supervisor found he was spending too much time overseeing Abraham. In any event, because the entire custodial staff was laid off, the particular shift to which Abraham was assigned could not have had an impact on whether he kept his job, as he alleges.

4

Abraham's assertions that the legitimate reasons given by Abington are all pretextual are not supported by the record. With the possible exception of his own unsworn affidavit listing what facts a former co-worker would verify, Abraham points to no testimony or documentation that would support his assertion. In addition, we agree with the District Court's conclusion that Abraham fails to show that any of the above actions were taken in retaliation for his official and unofficial complaints of discrimination.

Finally, assuming that such claims are cognizable under the ADEA, we turn to Abraham's hostile work environment/harassment claims. The most potentially problematic of Abraham's harassment allegations are five separate instances of name-calling by Abraham's assistant supervisor, apparently related to his age (e.g., "old head," "old motherf***er"), over the course of a two-year period. Of these instances, at least two occurred during shared off-duty car rides. And, upon receiving notice of the harassment, Abington investigated the situation and notified the supervisor in writing about the inappropriate nature of his comments. Even assuming the truthfulness of these allegations, Abraham fails to show the type of pervasive, severe conduct required. See West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995) (describing standard for such claims); see also Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (teasing, offhand comments, and isolated incidents do not create an environment that is sufficiently hostile); Peterson v. Scott County, 406 F.3d 515, 524 (8th Cir. 2005) (supervisor's regular

references to "old ladies" and refusal to allow employee to participate in a training session in part due to her age is insufficient to survive summary judgment); Racicot v. Wal-Mart Stores, Inc., 414 F.3d 675 (7th Cir. 2005) (co-workers' statements that employee should not be working at her age, interference with work and vacation schedule, and teasing that she could pick up heavy shipments if she were younger is insufficient).

We agree with the District Court that the failure of Abraham's claims under the ADEA dictates their failure under Pennsylvania's Human Relations Act, as well. See e.g., Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).

As the defendants were entitled to judgment as a matter of law, we will affirm the judgment of the District Court.