Judy **REALES** and Antonio **Reales**, as Individuals and Co–Administrators of the Estate of Melissa J. Hill, deceased, Plaintiffs–Appellants,

v.

**CONSOLIDATED RAIL CORPORATION,** Defendant–Appellee.

No. 95–2268.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1995.

Decided May 30, 1996.

John A. DeMato (argued), DeMato & Associates, Hamond, IN, for plaintiffs-appellants.

Harold Abrahamson, Michael C. Adley (argued), Abrahamson, Reed & Adley, Hammond, IN, for defendant-appellee.

Before POSNER, Chief Judge, and ESCHBACH and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Attempting to cross the railroad tracks ahead of an oncoming Conrail train, fifteen-year old Melissa Hill maneuvered her bicycle around the automatic gates and onto the tracks. Her cousin, who had done the same thing seconds before, crossed the tracks successfully; she was not so lucky. She hesitated for a split second, and then she was struck by the train and killed. Her parents, Judy and Antonio Reales, brought this wrongful death action alleging that Conrail had negligently failed to install warning devices at the crossing and had negligently operated the train. After the Reales failed three times to meet the court's deadline for responding to a motion for summary judgment that Conrail filed, the court granted Conrail's motion and denied the Reales' motion to accept a one-day late filing and to reconsider the summary judgment. Because we find that the district court did not abuse its discretion in its handling of the motion, we affirm.

The fatal accident occurred in Chesterton, Indiana, at the intersection of Fourth Street, which runs in a north-south direction, and two sets of railroad tracks, which run east-west. The Fourth Street crossing is protected by automatic crossing gates and flashing lights. At the time of the accident, the undisputed facts properly before the district court showed that the gates were down, the flashers were operating, and the train was sounding its horn. Indeed, even in this Court plaintiffs have not suggested that they would have been able to present any facts that cast doubt on this much of the story. They claim in their Reply Brief only that they would have disputed the speed of the train, the precise location where Melissa was struck, and the general lack of enforcement in Chesterton of laws regarding train crossings. These points do not raise factual issues about the protective measures Conrail took, nor are they properly before this Court in

any event, since they were not raised in the Reales' opening brief. *Brooks v. United States*, 64 F.3d 251, 257 (7th Cir.1995).

The Reales filed their wrongful death action on July 1, 1994. In it, they alleged that Conrail was negligent in four respects: (1) it failed to install adequate safeguards at the Fourth Street crossing; (2) it operated the train at an excessive speed; (3) it failed to sound the train's horn in a timely fashion; and (4) it failed to maintain the gates and safety equipment at the crossing, so that local residents were lulled into believing no trains were coming even though the gates were down. On August 26, 1994, the district court ordered that all discovery had to be completed by February 27, 1995, and the case was set for trial beginning June 5, 1995.

After the discovery period was closed, on March 15, 1995, Conrail filed a motion for summary judgment with supporting materials. Under Local Rule 7.1 of the Northern District of Indiana, the Reales had until April 1, 1995, or fifteen days after service of Conrail's motion in which to respond. April 1 came and went without a word from the Reales. On April 11, they filed their first motion for an extension of time, stating that they had been unaware of the time period in Rule 7.1. They requested that they be given until April 15, 1995, to file their response, citing a variety of practical problems counsel was facing. The court entered no order at that point, and on April 17 plaintiffs filed a second motion for more time, which they entitled a "Verified Motion for Final Extension of Time." In that motion, they requested an extension until April 21, which the district court granted on April 20. No response was forthcoming on the 21st either. Instead, the Reales came in with yet another motion for a "final" extension of time. In this motion, counsel asserted that the office copy machine had run out of toner and had stopped working, which prevented him from compiling the necessary materials. He also stated that no area companies had toner in stock, and that no area copy services could process his order on such short notice.

Once again, the court granted the motion, this time fixing an April 24, 1995 deadline.

On April 24, once again, the Reales neither filed a response nor did they notify the court or the clerk's office that they were prevented from making a filing. Consequently, on April 25, 1995, the court issued an order granting Conrail's summary judgment motion. Based on the undisputed testimony, the court found that the train was operating below the federally prescribed speed limit and that there was no genuine issue of material fact challenging the conclusion that Melissa Hill was more than 50 percent at fault. The first conclusion required judgment for Conrail on the first theory of the complaint, and the comparative negligence finding entitled Conrail to judgment on the other three. See Indiana Comparative Fault Act, Ind. Code § 34–434.

Shortly after the district court issued this order, at approximately 10:00 a.m. on April 25, the Reales filed a verified motion to accept a filing one day late. To justify the late filing, the Reales explained that they failed to meet the April 24 deadline because of "surprise and unexpected circumstances"—new mechanical problems with the copying machine. Counsel's copier was out of service until late in the afternoon of April 24, counsel had been in trial most of the day, and the staff did not finish copying the response until 4:55 p.m. They tried to file the response then, but the clerk's office was closed. The district court denied the motion, and then denied two motions for post-judgment relief.

On appeal, the Reales present two issues: (1) may a district court grant summary judgment "solely as a result of the nonmoving party's failure to file a timely response," and (2) did the district court abuse its discretion in refusing to accept the one-day late response, "when the late filing was due to unforeseen circumstances beyond Plaintiffs' control." We first address the second question, and then the first.

■ The second question challenges the district court's ability to establish and enforce deadlines for the filing of motions and other papers. It is plain that they have, and must have, this power. The Federal Rules of Civil Procedure contain numerous deadlines, and Rule 83 entitles each district court to adopt local rules of practice and procedure that are consistent with statutes and rules adopted under the two Enabling Acts, 28 U.S.C. §§ 2072 and 2075. Rule 56(c) permits a party to file a motion for summary judgment up to ten days before the time fixed for the hearing. The Northern District of Indiana has supplemented Rule 56 with more particular time periods governing the remainder of summary judgment practice, including Rule 7.1, which requires a response within fifteen days of the motion.

Federal Rule of Civil Procedure 6 specifies precisely how the time periods are to be calculated (Rule 6(a)) and discusses the circumstances under which an enlargement of a time period may be granted (Rule 6(b)). If a request for enlargement of time is received within the period that had been prescribed, the court for "cause shown" may grant the request; if the motion is made after the time has expired, the court must be satisfied that the failure to act was the result of excusable neglect. Although Rule 6(b) sets forth a number of time periods that may not be extended except as specified in other rules, Rule 56 is not one of them.

■ The district courts must manage a burgeoning caseload, and they are under pressure to do so as efficiently and speedily as they can, while still accomplishing just outcomes in every civil action. See Rule 1; Civil Justice Reform Act of 1990, 28 U.S.C. §§ 471–482; Judicial Conference of the United States, *Long Range Plan for the Federal Courts* at 66 (1995). Part of that job means that they are entitled—indeed they must—enforce deadlines. Necessarily, they must have substantial discretion as they manage their dockets. Consequently, this Court reviews decisions such as the district court's refusal here to grant the Reales a fourth extension of time only for abuse of discretion. See *Spears v. City of Indianapolis,* 74 F.3d 153, 157 (7th Cir.1996) (presenting a factual scenario remarkably like the one before us here); *Wienco, Inc. v. Katahn Assocs.,* 965 F.2d 565, 567 (7th Cir.1992); *United States v. Kasuboski,* 834 F.2d 1345, 1352 (7th Cir. 1987).

The account of the case given above shows that Judge Lozano did not take a precipitous

step when he denied plaintiffs' final effort to extend the time. Far from it; he had granted several extensions, even though nothing at all had been filed during the period prescribed by Rule 7.1, and even though the reasons that plaintiffs' lawyer was offering seemed more like routine problems of office management than something that could not have been anticipated. The judge was therefore well within his discretion in concluding that the Reales had not demonstrated good cause for obtaining a fourth extension of time.

■ The judge also acted within his discretion when he set Conrail's motion for summary judgment on the calendar for early on April 25. Given plaintiffs' record in the case, he had no way of knowing that they would try to file later that morning. For nearly a month, the case had been ready for decision as far as the Northern District of Indiana Rules were concerned. There was no reason to wait any longer. See also Rule 56(e) (permitting court to enter summary judgment "if appropriate" if the opposing party files no response).

■ The Reales' first question proceeds on the faulty assumption that the *sole* reason the district court granted summary judgment was their failure to file a timely response. The district court's opinion makes it clear that this is not a case where judgment is entered as some kind of sanction, nor would it have been proper to do so. *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993). The only effect of their failure to file was to limit somewhat the materials in front of the judge that indicated whether there were genuine issues of material fact or not. As we noted above, it is unclear to what extent the Reales were prepared to proffer Rule 56(e) materials in opposition to the summary judgment that might have demonstrated such issues, but the judge was entitled to proceed on the record as it was before him at the open of business on April 25. See *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 254 (1st Cir.1994); *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir.1994).

■ The standard of review that we apply to the summary judgment here is, as always, a *de novo* standard, see *Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995), asking "whether, if the record of the summary judgment proceeding were the record of a trial, a reasonable factfinder, whether judge or jury, could find in favor of the party opposing the motion." *Gudmundsson*, 35 F.3d at 1112 (internal quotations and citations omitted). The only argument the Reales have raised properly before this Court is that an issue of material fact exists about the degree of Melissa Hill's fault for her death. Even though, as the district court recognized, comparative fault is normally an issue for the jury in Indiana, summary judgment is still appropriate if "there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion." *Thiele*, 68 F.3d at 184 (internal quotations and Indiana citations omitted).

On the record before the district court, no reasonable finder of fact could have found that Conrail's fault was equal to or greater than Melissa's. All of the eyewitnesses testified that before the accident, the crossing gates were down and the flashers were activated. Several witnesses heard the train sound its horn as it approached the crossing. Witnesses saw Melissa go around the gates and onto the tracks. Melissa hesitated, but proceeded anyway. On the other side, it is hard to imagine what precaution the railroad could have taken that it did not, on these facts. And, as we noted above, even the information proffered in the Reply Brief does not contradict the key points here. The district court correctly found, and we agree, that the undisputed facts show that Melissa was more than 50 percent responsible for the fatal accident. This finding, in turn, entitled Conrail to judgment as a matter of law.

We therefore AFFIRM the judgment of the district court.