In the

# United States Court of Appeals
### For the Seventh Circuit

No. 05-1855

WANDA RAYMOND,

*Plaintiff-Appellant,*

*v.*

AMERITECH CORPORATION, d/b/a SBC AMERITECH,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 4509—**Ronald A. Guzman**, *Judge.*

ARGUED NOVEMBER 8, 2005—DECIDED MARCH 29, 2006

Before CUDAHY, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Wanda Raymond appeals the
district court's grant of summary judgment in favor of
Ameritech Corp., d/b/a SBC Ameritech ("SBC"),[1] which
disposed of her employment discrimination lawsuit. Ray-
mond initially claims the district court abused its discretion

---

[1] After the appeal was filed, SBC's merger with AT&T was
finalized. As a result, SBC adopted the AT&T name. http://en.
wikipedia.org/wiki/SBC_Communications (last visited March 23,
2006). To remain consistent with the parties' usage, as well as the
proceedings below, we will continue refer to the defendant-
appellee as SBC.

by refusing to consider her brief and supporting materials opposing SBC's motion for summary judgment (her "response"), which Raymond purportedly filed by mailing it the day it was due. Raymond asserts that as a result, summary judgment was erroneously granted in favor of SBC. For the following reasons, we affirm the grant of summary judgment.

## I.  BACKGROUND

Wanda Raymond filed a complaint in June 2003 alleging SBC fired her because of her age (in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA")), and her race and sex (in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII")). For nearly a year after the complaint was filed, the parties engaged in discovery under the supervision of Magistrate Judge Edward Bobrick, who twice extended the discovery cutoff and twice extended the summary judgment briefing schedule.

After the first extension of summary judgment briefing, the magistrate judge ordered discovery to be closed on February 27, 2004, allowing only scheduled depositions to take place thereafter. Raymond deposed Cinthia Williams, employed in SBC's human resources department, and claimed from that deposition she determined Eliska Paratore, the human resources director, would have more knowledge of Raymond's termination. Raymond gave SBC notice of Paratore's deposition on March 24.

On March 25, 2004, the magistrate judge held a status hearing, during which the parties quibbled about discovery. Raymond asked that discovery be extended so that she could depose Paratore because Paratore had received an email relating to Raymond's termination. SBC opposed the deposition, noting that the email was provided to Raymond in December 2003. Despite expressing strong doubts about

the relevance of what Paratore, and another SBC employee Raymond sought to depose, would have to say, initially the magistrate judge was inclined to allow Raymond to schedule two new depositions. But that initial view changed when the magistrate judge then turned to the subject of Raymond's deposition.

SBC previously had deposed Raymond for seven hours and asked for permission to complete it. Raymond sought to limit the remainder of the deposition to one hour. The magistrate judge declined to do so, however, observing that Raymond had brought a wide array of claims, including a claim for emotional distress, and noting that SBC previously had treated Raymond in a civil manner. Again Raymond balked at the notion of being deposed without a time limit. Citing Raymond's reluctance to cooperate and her prior knowledge of the individuals she wanted to depose, the magistrate judge ordered discovery to be closed and that no further discovery efforts be made aside from the completion of SBC's deposition of Raymond. On May 6, 2004, District Judge Ronald A. Guzman issued an order adopting the magistrate judge's rulings denying further discovery by Raymond.[2]

On May 25, 2004, the magistrate judge extended the summary judgment briefing schedule for the second time,

---

[2] We need only briefly address Raymond's claim that the discovery period should have been extended so she could depose Eliska Paratore. We review the district court's decision not to reopen discovery for abuse of discretion. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000) (citation omitted). Raymond's argument has no merit. Raymond knew of Paratore months before discovery closed, her request was late, and the expected value of Paratore's testimony was weak. Moreover, Raymond caused the magistrate judge to close discovery by resisting SBC's legitimate effort to continue her deposition. The district judge acted within his discretion in denying a further extension of the time for discovery.

establishing the following deadlines: SBC's summary judgment motion was to be filed by August 2, 2004; Raymond's response was to be filed by September 3, 2004; and SBC's reply was to be filed by September 20, 2004.

On August 2, 2004, SBC filed its motion for summary judgment. SBC served the motion by mailing it to Raymond's counsel but used an old address, which resulted in Raymond's counsel not receiving the motion until August 10. On August 16, Raymond asked the court for an extension until October 4 to file her response, citing the delay in service and a planned extended vacation that would keep Raymond's counsel out of the country from August 24 to September 13. On August 18, the district judge granted in part Raymond's request by giving eighteen additional days, making the response due September 21, 2004. The order granting this extension request made no mention of whether or not additional extensions would be given.

On September 16, Raymond's counsel filed a second motion for an extension of time, citing as reasons for delay his vacation, his illness, his personal business matters, and his co-counsel's busy schedule. The district judge denied this motion the next day, keeping the September 21, 2004, deadline intact. Upon learning of the denial, Raymond's counsel worked "almost around the clock" on the response.

On September 20, the attorneys for each party spoke on the phone, as confirmed by SBC's follow-up letter and fax to Raymond's counsel. In part, SBC's writing stated, "[I]f we are unable to pick up the response brief tomorrow night, we will pick it up on [the morning of September 22]." SBC's agent obtained Raymond's response at her counsel's office on the afternoon of September 22. On September 24, SBC complained in writing (again by fax and mail) to Raymond's counsel that the papers SBC was given did not include a copy of the notice of filing or a complete Local Rule 56.1 statement, as required by the Northern District

of Illinois Local Rules. Additionally, SBC's September 24 writing indicates that Raymond remained obligated to mail the response to SBC.

Raymond's counsel mailed the response to the district court clerk some time before midnight on September 21, the filing deadline imposed by the court. The U.S. Postal Service's tracking system confirmed that the response was delivered to the district court clerk's office at 10:24 a.m. on September 22. Raymond's response was not stamped "filed" until September 24.

On September 24, noting that Raymond did not file her response on or before the September 21 deadline, the district judge informed the parties that it would rule on SBC's summary judgment motion on the merits and without Raymond's response. On September 29, Raymond filed a motion for reconsideration, asserting that her late filing was an excusable mistake and that she had new evidence. That same day, Raymond filed an amended certificate of service, in which Raymond's counsel certified that a copy of Raymond's response was given to SBC's counsel on September 22. The district judge rejected these arguments and denied the motion to reconsider.

On March 4, 2005, the district judge issued a ruling holding that because of Raymond's failure to comply with Local Rule 56.1, SBC's submitted facts were deemed admitted. Judge Guzman examined SBC's motion on the merits, and, finding no genuine issues of material fact, granted summary judgment. On appeal, Raymond argues first, that her response was timely, and second, if late, her negligence should have been excused. Either way, according to Raymond, the district court erred by refusing to take into account her opposition to SBC's motion for summary judgment, which she claims raises a dispute of material fact.

## II. ANALYSIS

*A. Raymond's Response*

Raymond argues that the district court abused its discretion by determining she filed her response late and by subsequently refusing to consider it. "We review a district court's decision concerning whether a litigant complied with a local rule, such as Local Rule 56.1, for an abuse of discretion." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005) (citation omitted). Specifically, we have held that district courts are entitled to expect strict compliance with Local Rule 56.1, which requires that a party opposing summary judgment "serve and file" its brief and supporting materials. N.D. Ill. R. 56.1(b); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (citations omitted).

Raymond claims she either complied with, or substantially complied with, Rule 5(d) of the Federal Rules of Civil Procedure, depending upon which of her acts constitute a "filing." For her "actual compliance" argument, Raymond asserts she met the district court's deadline because she mailed her response prior to midnight on the day it was due. For her "substantial compliance" argument, Raymond claims that with no firm deadline in the Rules, she was subject only to Rule 5(d)'s requirement merely to file within a "reasonable time" after serving SBC. Raymond says she did this by "filing" her response when it was received by the clerk's office at 10:42 a.m. the day after the deadline. Raymond is wrong in all respects.

Filing with the court is defined in Rule 5(e) which states: "The filing of papers with the court . . . shall be made by filing them with the clerk of court, except that the judge may permit the papers to be filed with the judge . . ." (*See also* N.D. Ill. Rule 5.4.) The posting of papers addressed to the clerk's office does not constitute "filing" under Rule 5(e).

Unlike some state court rules[3] the Federal Rules of Civil Procedure do not authorize filing to be accomplished by deposit of papers in the mail.

Thus, Raymond could not have filed her response on September 21 by dropping it in the mail before midnight, or the next morning, when according to the postal receipt it was received. Raymond has not provided any detail regarding the district court's or Judge Guzman's filing procedure that would explain the two-day lag between when the response was allegedly received by the district court clerk and when it was processed. Therefore the earliest filing date which for which there is evidentiary support is September 24, the date the response was stamped "filed."

As for the governing deadline, Raymond does not explain how Rule 5(d)'s "reasonable time" standard prevails over a date set by a court. Rule 5(d) is a default rule, applicable to most interactions between litigating parties and between parties and the courts. Rule 5(d) does not by its terms eradicate the effect of court-imposed deadlines. Raymond merely quotes *Blank v. Bitker*, 135 F.2d 962, 965 (7th Cir. 1943), which noted, "[T]here is no requirement in the Federal Rules of Civil Procedure as to filing. . . . And Rule 5(d) permits filing with the court within a reasonable time after service." True, but this does not mean that Rule 5(d) trumps a deadline set by a court, so that the deadline to file is established by when service occurs. *Blank* involved one party's attempt to benefit from the other party's filing its answer three days late,

---

[3]  For example, the Indiana Rules of Trial Procedure indicate that filing may be accomplished by a number of methods, including: "Mailing to the clerk by registered, certified or express mail, return receipt requested; . . . Filing by registered or certified mail . . . shall be complete upon mailing . . . ." Ind. Trial Rule 5(F).

despite timely service. *Id*. *Blank* did not deal with the trial court's enforcement of its deadlines.[4]

The rule which does apply is Rule 6(b), which clearly gives courts both the authority to establish deadlines and the discretion to enforce them. *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996) (explaining that in managing their caseloads, district courts "are entitled—indeed they must—enforce deadlines"). The September 21 deadline set by the court was binding on Raymond. On that date Raymond had failed to meet the filing and service requirements of Local Rule 56.1. Raymond's response was late by

---

[4] We note that Raymond's argument also rests upon the assumption that SBC was properly and timely served by her compliance with SBC's demand to make a copy available at Raymond's counsel's office prior to midnight on September 21. Although this is not a prescribed method of service under Rule 5(b)(2)(A-C), Rule 5(b)(2)(D) does allow service by alternative means if the party to be served consents in writing. Our review of the record shows that SBC did ask in writing (by fax and mail) that Raymond's counsel call SBC's counsel as soon as the response was ready.

However, SBC was motivated by its own deadline to reply to Raymond's response in two weeks, so it appears that SBC made its "demand" only after Raymond's counsel indicated the response would be late. Raymond does not argue otherwise. A request made under duress hardly constitutes consent to a specific method of service. SBC continued to hold Raymond responsible for mailing the response, but the record does not indicate that this ever occurred. In any event, by Raymond's own admission, the earliest Raymond's response was made available to SBC was September 22, the day after the deadline. Moreover, the papers SBC did receive did not comply with Local Rules 56.1(b) (missing pages) and 5.5(b) (no certificate of service). So even if Raymond did file on time, she did not comply with Local Rule 56.1(b)'s service requirement because SBC had not been properly served on September 21.

any measure, which leads us to the only viable argument Raymond makes—namely, whether the district court abused its discretion in refusing to accept Raymond's late filing.

Raymond claims the district court abused its discretion by not finding "excusable neglect." In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), the Supreme Court broadly defined "excusable neglect." We have held that *Pioneer* applies whenever "excusable neglect" appears in the federal procedural rules. *See United States v. Brown*, 133 F.3d 993, 996 (7th Cir. 1998) (applying *Pioneer* to Federal Rule of Appellate Procedure 4(b))*; Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 359 (7th Cir. 1997) (applying *Pioneer* to Rule 60(b)(1)); *Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir. 1996) ("[T]he tenor of [*Pioneer*] is that the term [excusable neglect] bears the same or similar meaning throughout the federal procedural domain.") (citation omitted). Rule 6(b)(2) gives courts discretion in most situations to forgive missed deadlines by reason of "excusable neglect." Hence, our standard of review of the district court's refusal to make such a finding is abuse of discretion. In *Pioneer*, the Court held that the standard for review of a rejection of excusable neglect:

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395 (citation omitted).

First, SBC was under its own deadline to file its reply to Raymond's response, so any delay of service on Ray-

mond's part directly impacted SBC by reducing the time available for SBC to reply. It was SBC who made the effort to mitigate its prejudice by sending an agent to Raymond's office to pick up the response. The copy SBC received was late and incomplete. Although SBC does not allege any specific harm by the delay, certainly there was a danger of prejudice to SBC.

Second, is consideration of the length of delay and its impact on the proceedings below. In *Spears v. City of Indianapolis*, 74 F.3d 153, 156-57 (7th Cir. 1996), the district court refused to grant—under Rule 6(b)(1)—a one-day enlargement for the plaintiff to file supporting materials for his already-filed brief opposing summary judgment. Apparently the delay was unforeseeable, having been caused by a sudden computer failure, but the court had already granted two extensions. *Id.* at 157-58. Affirming, we noted:

> We live in a world of deadlines. If we're late for the start of the game or the movie, or late for the departure of the plane or the train, things go forward without us. The practice of law is no exception. A good judge has a right to assume that deadlines will be honored.

*Id.* at 157.

A court's decision to grant an extension of a deadline yet to pass under Rule 6(b)(1) (as in *Spears*) presents a slightly different situation than a court's decision to excuse missing a deadline which has already passed under Rule 6(b)(2) (the instant case). But court-imposed deadlines are no less binding merely because they have passed. The overriding principle at stake involves the district court's ability to mitigate the scourge of litigation delays by setting deadlines "to force parties and their attorneys to be diligent in prosecuting their causes of action." *Id.* (quoting *Geiger v.*

*Allen*, 850 F.2d 330, 331 (7th Cir. 1988)). In the context of summary judgment, we have held strict enforcement of Local Rule 56.1 is "justified in light of the district court's significant interest in maintaining the integrity of its calendar." *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992).

Contrary to Raymond's assertion, the fact that the district judge did not ultimately issue his order granting summary judgment to SBC for several months is irrelevant. Rather, our focus is on the circumstances as they existed at the time. In Raymond's case, 15 months had passed since the complaint was filed. The deadline to close discovery had been extended twice. The summary judgment briefing schedule had been pushed back twice. As we previously found, the filing date of the reply was September 24, three days late. Excusing Raymond's delay likely would have caused the court to extend SBC's deadline to reply, again pushing back the case on the court's calendar.

Third, we look at the reasons for the delay. On appeal, Raymond emphasizes her receipt of SBC's motion for summary judgment was ten days late. This argument ignores what the record makes clear—that the district court, *on Raymond's motion*, previously granted an enlargement of 18 days to accommodate this delay as well as Raymond's counsel's vacation. Raymond also argues she did not have enough time to respond to SBC's motion for summary judgment because it was a difficult, fact-intensive case and that, after the denial, Raymond's counsel worked around the clock to prepare the response—about four days and nights. But Raymond's counsel does not claim to have worked around the clock before the denial, and the case was no less "fact-intensive" at that time. Nor does the record indicate that Raymond's counsel started to prepare the response during the time after actually receiving SBC's motion for summary judgment and before leaving for vacation, a period of two weeks. Under these circumstances,

Raymond had ample time to prepare her response, the prevailing reason for the delay being within the reasonable control of her counsel. Moreover, Raymond's reasons to enlarge the time were simply insufficient.

Raymond asserts she acted in good faith, and we do not disagree. But "the district court need not show repeated, wilful and recalcitrant conduct" to enforce its deadlines. *Wienco*, 965 F.2d at 568. In *Reales*, we upheld the district court's refusal to consider the plaintiff's one-day-late response after the plaintiff had requested multiple extensions, some of which were made after the underlying deadlines had passed. 84 F.3d at 997. Raymond claims she lacked the "reckless disregard" for deadlines as the plaintiff did in *Reales*. But "reckless disregard" is nowhere to be found in *Reales*, and to require such a showing would run contrary to the abuse of discretion standard.

Raymond cites *Bolt v. Loy*, 227 F.3d 854, 856 (7th Cir. 2000), arguing that she was entitled to notice from the court that the first extension was final and that no further extensions would be allowed. *Bolt* involved the district court's outright dismissal of a case with prejudice, compared to the instant case, in which the district court chose not to consider a late-filed response to summary judgment, a less severe remedy. *See Reales*, 84 F.3d at 997. That the district court granted summary judgment for SBC on the merits was secondary to the enforcement of its deadline. The district judge was not obligated to give Raymond notice that the September 21 deadline was firm beyond swiftly denying her second extension request, four days before the deadline.

In sum, the district judge was within his discretion not to excuse Raymond's delay. Raymond had already obtained one extension, giving her 48 days in all, to file her response. The court gave clear notice of the deadline when it granted the first extension and when it denied the second.

Raymond missed the deadline, and her reasons for doing so were within her control. SBC's interests were at stake as well. In managing its calendar, the court was presented with a case which had dragged on for well over a year and acted well within its discretion to strictly enforce its own deadline. Thus properly, the summary judgment motion was determined only on the Local Rule 56.1 submission of SBC.

### B.  The Propriety of Summary Judgment

We review a district court's grant of summary judgment de novo, "to determine whether there exists a 'genuine issue as to any material fact, and [that] . . . the moving party is entitled to judgment as a matter of law.'" *Stop-N-Go of Madison, Inc. v. Uno-Ven Co.*, 184 F.3d 672, 676 (7th Cir. 1999) (citation omitted). The motion is appropriately granted if no reasonable jury could find for the nonmoving party. *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). By supporting its motion for summary judgment with its Local Rule 56.1 statement, SBC shifted the burden of production to Raymond. *See Kaszuk v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986) (citations omitted). Raymond's failure to respond in kind results in deeming admitted the uncontroverted statements in SBC's Local Rule 56.1(a) submission. *See Wienco*, 965 F.2d at 568 (citations omitted). However, a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not, of course, automatically result in judgment for the movant. *See Reales*, 84 F.3d at 997 (citing *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993)). The ultimate burden of persuasion remains with SBC to show that it is entitled to judgment as a matter of law. *See Wienco*, 965 F.2d at 568 (citing *Herman v. Chicago*, 870 F.2d 400, 404 (7th Cir. 1989)).

We recount the facts underlying Raymond's lawsuit for purposes of SBC's summary judgment motion based solely upon SBC's version of events, as reflected in SBC's supporting materials. Raymond, an Asian-American female, was hired by SBC in 1995 as an account manager and in 1997 became a performance consultant in human resources. In December 1999, Raymond transferred to the Illinois Authorized Distributor Sales Team ("Illinois AD Sales Team") as a distribution manager and remained in that position until she was laid off in November of 2001. Raymond was responsible for managing the accounts of authorized distributors, which are outside companies SBC contracts with to sell its products and services. Essentially, Raymond's duties were to bolster distributors' sales by preparing business plans, and by training, coaching, and evaluating their progress.

Prior to the layoffs, the Illinois AD Sales Team consisted of ten people. That team, including Raymond, was supervised by Illinois sales manager John Rozinsky, who in turn reported to David Conley, a divisional director of sales. As divisional sales director, Conley had responsibility for all sales team members located in five states: Illinois, Indiana, Michigan, Ohio, and Wisconsin. Brian Clark, another divisional sales director, supervised sales team members in two other areas. Both Conley and Clark reported to Brian Jump, Vice President of Mid-Market Sales.

SBC evaluated the performance of its distribution managers based on sales generated by the distributors, using "stack rankings" as the primary measurement tool. The stack rankings broke down distributors' sales into four categories and were created on a month-to-date and year-to-date basis.

On October 26, 2001, SBC announced by email to employees that there were going to be layoffs due to economic conditions. In late October 2001, Jump informed Conley and Clark that five distribution managers positions had to be

eliminated—four from Conley's division and one from Clark's division. Which managers to lay off was up to Conley and Clark. Conley decided to reduce his manager headcount by one per state with the exception of Wisconsin, which at the time had the fewest distribution managers. Conley contacted the state sales managers in Illinois, Indiana, Michigan, and Ohio to obtain their recommendations of which distribution managers should be laid off from their respective sales teams.

The first factor Conley discussed with each sales manager was whether any distribution managers were on a Performance Improvement Plan ("PIP"). If so, they would be selected for the layoff. In three states, three managers fell into that category: Elana Schafer in Indiana (African-American, female, 41 years old); Bob Cruickshank in Michigan (white, male, 51 years old); and Scott Adams in Ohio (white, male, 36 years old).

None of the distribution managers on the Illinois AD Sales Team were on PIPs, and sales manager Rozinsky told his team that no distribution managers in Illinois would be laid off. But this assurance did not come from sales director Conley, who never intended to deviate from his plan of laying off one distribution manager per state.

Conley developed the following criteria to guide his decision: the August and September 2001 monthly stack rankings, the current October sales reports (preliminary stack rankings), the input and recommendation of Rozinsky, business need, and each employee's skill set and ability to be successful. On the stack rankings, Raymond was second from last in August 2001 and last in September and October 2001. Mike Gottschalk was one spot higher than Raymond in each month. Conley determined that Gottshalk and Raymond were the lowest performing distribution managers.

Conley and Rozinsky discussed the personal strengths and weaknesses of the distribution managers on the Illinois

AD Sales Team. Rozinsky told Conley that Raymond's knowledge of data products and her sales skills were weak and that these abilities would be more important in light of SBC's change in emphasis with respect to revenue generation. Conley asked Rozinsky whether Gottschalk or Raymond had more potential for success in the following year. Rozinsky chose Gottschalk. Conley decided to lay off Raymond.

Shortly thereafter, Rozinsky asked Conley whether he would consider laying off Gottschalk instead of Raymond because Gottschalk would have an easier time finding another job as a "young guy" and "single." Conley responded that those were not valid reasons and not part of the objective criteria. On November 16, 2001, Conley told Raymond she was being laid off and that pursuant to SBC policy, she could reapply for employment in six months. Raymond was age 46 at the time. After her dismissal, Raymond's duties were divided among the remaining distribution managers on the team.

Raymond's substantive allegations are that SBC discriminated against her on the basis of her race, sex, and age. Title VII prohibits an employer from firing an employee because of the individual's race or sex. 42 U.S.C. § 2000e-2(a)(1). The ADEA similarly proscribes employment discrimination on account of a person's age. 29 U.S.C. § 623. There are two methods in which a plaintiff may prevail in an employment discrimination lawsuit: the direct and the indirect methods. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002) (citation omitted).

Under the direct method, Raymond must prove that the motivation behind SBC's decision to lay her off was due to Raymond's race, sex, or age. She may do so by using direct or circumstantial evidence. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 529-30 (7th Cir. 2003) (discussing direct method under Title VII); *Radue v. Kimberly-Clark*

*Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) (discussing direct method under ADEA). Direct evidence of discrimination would amount to an admission by SBC that Raymond was terminated on the basis of her race, sex, or age. *See Radue*, 219 F.3d at 616. The record is barren of anything of this kind and contains no basis upon which to rationally infer SBC's discriminatory animus. For Raymond to defeat summary judgment, she can only do so under the indirect method.

*McDonnell Douglas Corp. v. Green* established the framework by which a plaintiff can prove discrimination indirectly. 411 U.S. 792 (1973). "The *McDonnell Douglas* framework applies to both Title VII and ADEA claims." *Krchnavy*, 294 F.3d at 875 (citations omitted). Under the indirect method, there are four elements of Raymond's prima facie case: (1) she is a member of a protected class; (2) she was performing at a level that met her employer's legitimate expectations; (3) she was subject to an adverse employment action; and (4) she was treated differently than a similarly situated person outside her protected classes. *See id.* (citing *McDonnell Douglas*, 411 U.S. at 802); *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citations omitted). If Raymond could establish her prima facie case, then the burden would shift to SBC to "articulate some legitimate, nondiscriminatory reason" for Raymond's termination. *See McDonnell Douglas*, 411 U.S. at 802. If SBC did so, it would then be up to Raymond to show SBC's justification is pretextual. *See Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citation omitted). As the plaintiff, it is Raymond who bears the ultimate burden of proof. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (citation omitted).

SBC concedes the first three elements of Raymond's prima facie case, but contests the fourth, arguing that Raymond was not treated differently than someone similarly situated outside her protected class. Employees are

similarly situated if they are directly comparable in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted). The inquiry is fact intensive, requiring consideration of the circumstances as a whole. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000). We have noted that in reduction-in-force ("RIF") cases such as this, "plaintiffs were required to show at a minimum that the [allegedly similarly situated] employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought, and that the younger employees obtained the desired positions around the same time as the RIF." *Radue*, 219 F.3d at 618 (collecting authority).

Reviewing solely SBC's Local Rule 56.1 submission, Raymond does not meet her prima facie burden because she does not prove the fourth element of discrimination. Gottschalk appears to be the only person with whom Raymond could conceivably be compared because he was the worst-performing distribution manager in Illinois (besides Raymond) who was not on a PIP. Nevertheless, Raymond consistently ranked below Gottschalk on the stack rankings, and Rozinsky opined that Gottschalk's skills were better suited to SBC's future needs. Because there is no evidence that Raymond was treated differently than a similarly situated employee outside her protected class, she has not made her prima facie case of discrimination.

## III.  CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion by refusing to consider Raymond's late response to SBC's motion for summary judgment. The record shows that SBC was entitled to judgment as a matter of law. The district court's grant of summary judgment in favor of SBC is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—3-29-06