NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 11, 2007
Decided September 20, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3068

| | |
|---|---|
| DIANNE FOSTER, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 04 C 6458 |
| PRINCIPAL LIFE INSURANCE COMPANY, *Defendant-Appellee.* | Charles P. Kocoras *Judge.* |

**O R D E R**

Dianne Foster[1] sued Principal Life Insurance Company,[2] her former employer, arguing that it terminated her on the basis of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634. The district court granted summary judgment to Principal, concluding that Foster failed to establish

---

[1] Both briefs consistently misspell the plaintiff-appellant's first name. The correct spelling is Dianne.

[2] We have reformed the caption of this case to reflect the correct name of the defendant-appellee.

her prima facie case and, alternatively, that Principal's stated reason for her termination was not a pretext for discrimination. Foster appealed, and we affirm.

In 1990 Foster began working as Office Manager for an insurance company in Oak Brook, Illinois. Principal acquired the company in 1999, and Foster continued to work for Principal in the same capacity. Foster's office sold employee benefit programs. Foster's tasks included overseeing administrative staff, working on group health insurance proposals, and submitting new case submissions to underwriting. Over time, Foster went from supervising only three staff members to eleven or twelve. As Office Manager, Foster reported to Dave Kapustka, Vice President of Group Sales.

Foster's employment was not without problems. In 1999 she received a final written warning for calling Kapustka "a fucker"—a retort she made after a sales meeting in which Kapustka, according to Foster, "dismissed her like a little girl." After receiving the warning, Foster submitted her resignation, but Kapustka ultimately persuaded her not to quit. However, the final warning letter also stated that Principal had "very serious concerns" about Foster's job performance. It noted that Kapustka had had "multiple discussions" with Foster about her "need to manage the office, organize and begin issuing quotes on time, training of employees, etc." The letter also stated, "We cannot afford more customer/employee complaints."

After this incident Foster's performance reviews continued to show some problem areas but were generally satisfactory. Her 1999 performance review, issued about six months after the final warning letter, indicated that she did "not meet requirements" in three of the eight "major position accountabilities." However, her performance improved throughout the following year; her review showed that she met all eight requirements. Her 2001 and 2002 reviews, in a different format, indicate that she met almost all of Principal's expectations.

In late 2002 or early 2003, Principal decided to replace the Office Manager position with two newly created positions, the Client Services Director (CSD) and the Regional Client Services Director (RCSD). The CSD position was similar to the Office Manager position but required much more face-to-face contact with customers and brokers and a great deal of travel, including overnight stays. Whether Foster applied for this position is disputed; Principal states that Foster was interviewed, while Foster maintains that she did not apply for it because it was never posted. In any event, Sandra Mendicino, age 39, took the job. Mendicino, who had been working as an account executive, was offered the job because of her relationship with the home office, her ability to work renewals, and the respectful relationship she had with sales staff and agents. Foster, by contrast, had spent little time working outside of the office.

Applicants for the RCSD position were evaluated on their leadership skills, understanding of the underwriting process, and job experience—particularly in working with clients and brokers, and the home office. Foster applied for this position along with two other people, Denise Conner, who was in her 40s, and Cindy Close, age 32. Principal's Regional Vice Presidents decided to hire Close after interviewing the three candidates. They preferred Close because she had been with Principal for more than eight years, starting as an underwriter and ultimately managing the underwriting team, and also had strong relationships with the home office and had worked with customers and brokers on tough renewals. She also had good leadership skills and fully understood the pricing process.

After missing out on these two positions, Foster accepted a position in January 2003 as the Senior Marketing Consultant for Principal's United Healthcare business. In taking this position, Foster also accepted a salary reduction from $57,700 to $47,000, which she expressed unhappiness about to her supervisors on at least one occasion.

In late July, Mendicino sent Foster an email suggesting that she apply for an Account Executive position that was opening up in Bloomington, Illinois. The salary for this position was in the low $40,000's, even less than Foster's current job. Foster responded that she was not interested in applying for the job.

Not long after this email exchange, Principal eliminated Foster's position as part of a reduction in force. Principal's stated reason for terminating Foster was that the United Healthcare business had declined. Principal ultimately lost its contract to sell United Healthcare products. At the time of her termination Foster was 51 years old.

In early August 2003 Principal hired Allison Olcott, age 25, to fill a Marketing Specialist position in the Oak Brook office. The position paid between $33,400 and $43,500, less than Foster's most recent job. After her termination, Foster complained to Principal's Human Resource Generalist Rhonda Kilkenny that she was disappointed she had not been considered for the position. Kilkenny told Foster that she did not think Foster would be interested because the position paid less than what Foster had been earning and was a clerical position two levels below her position at Principal.

Foster subsequently filed a complaint with the Equal Employment Opportunity Commission, received a Notice of Right to Sue Letter, and then commenced this lawsuit, alleging that Principal unlawfully terminated her position and retaliated against her for complaining about Principal's hiring of Olcott. The district court granted Principal's motion for summary judgment, concluding that Foster had not shown any evidence of discrimination under the direct or indirect

burden-shifting method of proof. The court assumed that Foster was meeting Principal's legitimate expectations. However, Foster did not establish a prima facie case because she had not shown that similarly situated employees outside the protected class were treated more favorably. Even if Foster was able to establish a prima facie case, the court continued, she did not show that Principal's stated reason for her termination—the loss of the United Healthcare contract—was a pretext for discrimination.

On appeal Foster no longer contends that the reason given for her termination was pretextual. Instead she focuses her discrimination claim on Principal's failure to hire her into the two other available positions in 2003—those taken by Mendicino and Olcott.

The ADEA prohibits an employer from refusing to hire an individual because of her age. 29 U.S.C. § 623(a)(1). "To establish a claim under the ADEA, a plaintiff-employee must show that 'the protected trait (under the ADEA, age) actually motivated the employer's decision"—that is, the employee's protected trait must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.'" *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

To establish a prima facie case in a failure-to-hire claim, Foster must establish that she was over 40, was qualified for and applied for the job, and that after her rejection Principal considered other applicants. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This last prong is often referred to as the "similarly-situated" prong. Employees are similarly situated if they are directly comparable in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted). Plaintiffs are required to show "at a minimum that the [allegedly similarly situated] employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610-11 (7th Cir. 2006) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 322 (7th Cir. 2003).

Foster did not establish a prima case with respect to the Client Services Director job that Principal offered to Mendicino. Foster wants us to consider that she was better qualified but than Mendicino for the job and therefore similarly situated. But we will not second guess Principal's reasons for hiring Mendicino into the position—that Mendicino had a good relationship with the home office,

sales staff, and agents, and an exemplary ability to work renewals—unless Foster has evidence that her own qualifications are so superior to Mendicino's that "there can be no dispute among reasonable persons of impartial judgment that [Foster] was clearly better qualified for the position at issue." *See Mlynczak v. Bodman*, 442 F.3d 1050, 1059 (7th Cir. 2006) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002)). Foster's evidence of comparative qualifications does not suggest that she was "clearly better qualified" than Mendicino.

Foster also did not establish a prima facie case with respect to the Marketing Specialist position that Principal offered to Olcott because Foster did not apply for this job. Indeed, she expressly told Principal that she wasn't interest in it. Foster asks us to ignore her refusal to apply because she did know that her job was in peril, but her argument is unavailing. *See Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 558 (7th Cir. 2004) ("If a plaintiff does not apply for a job vacancy that is posted, he cannot make a prima facie case for unlawful discrimination or retaliation under Title VII unless the plaintiff demonstrates that the employer's discriminatory practices deterred plaintiff from applying."). Moreover, Foster submitted no evidence regarding Olcott's education, experience, or other attributes to show that their qualifications are similarly situtated. *See Balderston*, 328 F.3d at 322. To the contrary, the record instead shows that Foster had been working for Principal in a supervisory capacity and at a pay grade two levels above the Marketing Specialist position, indicating that she and Olcott were not similarly situated.

Even if Foster were able to make out a prima facie case of discrimination, she would still have to show that Principal's reasons for refusing to hire her were a pretext. *McDonnell Douglas*, 411 U.S. at 804. Principal's stated reason for not offering her the Marketing Specialist position was its belief that Foster would not accept a position that paid significantly less than what she was earning. Foster counters that this explanation was pretextual because she had accepted a reduction in pay earlier in her career at Principal.

"A pretext . . . is a deliberate false-hood." *Kodl v. Bd. of Educ.*, 490 F.3d 558, 562 (7th Cir. 2007); *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006) (citations and internal quotation marks omitted). "[T]o show pretext, [plaintiff] must show more than [defendant's] decision was mistaken, ill considered or foolish, [and] as long as [the employer] honestly believes those reasons, pretext has not been shown." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006) (internal quotations omitted). Here Foster has simply failed to offer any evidence suggesting that Principal's reason for not considering her for the lower position was dishonest. Principal *had* suggested that Foster apply for a lower-paying job—the position in Bloomington—shortly before she was terminated, and Foster declined their suggestion. Foster had also complained to Principal about having had to take the lower paying job earlier in her career. Thus Foster gave

Principal reasons to believe honestly that she would not want to take a lower paying job again precisely because she had regretted doing so once before.   The honesty of that belief has not been rebutted.

AFFIRMED.