# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-3442

COLETTE LUCKIE,

*Plaintiff-Appellant,*

*v.*

AMERITECH CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 8619—**Blanche M. Manning**, *Judge.*

ARGUED SEPTEMBER 28, 2004—DECIDED NOVEMBER 19, 2004

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-Appellant Colette Luckie filed suit against Ameritech Corporation, claiming racial harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* The district court granted Ameritech's motion for summary judgment on both claims. Luckie appeals, and we affirm.

*Background*

Luckie, an African-American, began her employment with Security Link, a division of Ameritech, in 1995. In 1997, she

was promoted to the position of Senior Manager of Organizational Development and Planning ("OD&P") in the Human Resources department of the Small Business Services ("SBS") business unit. SBS later merged with Ameritech's Enhanced Business Services unit to form a new unit, General Business Services ("GBS"). Orlando Ashford was Luckie's immediate supervisor and Jane Marvin, Vice-President of Human Resources for GBS, was Luckie's second-line supervisor.

Marvin left Ameritech on April 30, 1999 and was replaced by Gwen Patterson. Patterson had been the Vice-President of Human Resources at Ameritech Information Industry Services ("AIIS"). At the end of May 1999, Ashford also left Ameritech and Luckie began reporting directly to Patterson. In preparation for her new position, Patterson met with the president of GBS, Ronald Blake, who asked her to focus on widespread client dissatisfaction with Human Resources. Blake asked Patterson to talk to the managers of other business units to identify their concerns. As instructed, Patterson contacted several people for their feedback on the Human Resources organization and its employees. As part of this effort, Patterson contacted Marvin, even though she had left the company. During their conversation, Marvin expressed concern regarding Luckie's performance and communicated her belief that Luckie may have "topped out" and might not be able to meet the expectations of her job. Marvin further noted that a Performance Improvement Plan ("PIP") might be necessary. A PIP is a formal procedure by which an employee is given specific objectives and expectations in order to improve performance; in essence, the employee is given a last chance to improve before being terminated for poor performance. Patterson also contacted the Director of Human Resources, Sharon Krolopp. Krolopp also expressed concern regarding Luckie's performance. Additionally, Patterson spoke with Doug Heath, Director of the Ameritech Institute, who stated that Luckie had a "toxic effect" on the organization.

Soon after her arrival, Patterson met with Luckie to assess the performance of Luckie's direct reports. The parties disagree regarding the details of this meeting. Luckie claims that Patterson asked only about the minority employees and wanted Luckie to create performance issues with those employees, or else Luckie would herself be scrutinized. Luckie also contends that Patterson stated that she wanted to "change the complexion" of the department. For her part, Patterson denies asking Luckie to create performance issues with minority employees and denies making the "complexion" comment. Luckie further claims that Patterson later called an African-American employee named Richard Peterson a "dunce." Finally, as further evidence of discrimination, Luckie also points to an e-mail sent by one of her staff, James Boring, to Blake reflecting his dissatisfaction with the current culture at Ameritech and concern with Patterson's management style.

Though the details of Patterson and Luckie's meeting are disputed, it is undisputed that Patterson almost immediately began documenting performance problems with Luckie, including inaccessibility during work hours, missed deadlines, inaccurate communications, and failure to keep her credit card account up to date. Luckie contends that any credit card arrearage was due to Patterson not approving her expenses in a timely fashion. Patterson discussed her expectations with Luckie, but Luckie's performance did not improve. Patterson then met with Krolopp and Blake to discuss Luckie's continuing performance problems. With their input, Patterson ultimately decided to put Luckie on a PIP on August 27, 1999. By its terms, Luckie had 30 days to improve her performance; failure to meet the goals and expectations set out in the PIP could result in the termination of her employment. Patterson discussed the PIP with Luckie. During the PIP, Patterson met with Luckie regularly. In addition, Debbie Lewis or Susan Brenkus, who worked for different business

units and did not report to Patterson, also attended. The consensus among the three was that Luckie was defensive during these meetings and not open to suggestions.

At some point in August 1999, Luckie contacted the Ameritech internal EEO hotline to complain about Patterson's conduct and spoke with EEO representative Mamie Clay. Luckie only identified herself by her first name, and did not name Patterson as the manager about whom she was calling. Luckie asserts that Clay guessed that she was talking about Patterson and said she would talk to Patterson about the problem. Clay denies that she guessed that the manager was Patterson. Regardless, Patterson and Clay have both testified that they have never met or spoken to one another. Luckie contacted Clay at the EEO hotline again later in August, this time with another employee, Wanda Raymond (an Asian-American), on the line. Again, Luckie and Raymond used their first names only, and did not identify Patterson or the business unit in which they worked. At some point after this second call, Luckie visited Clay face-to-face. She still identified herself only as "Colette" and provided no new information.

Luckie then retained an attorney, who sent three letters to Ameritech beginning on September 16, 1999. The letters claimed that Luckie had been discriminated against and was interested in engaging in discussion to settle her claims. In part, the letters described the dispute between Luckie and Patterson over Luckie's credit card balance. In response to the letters, Deborah Ingram of Ameritech's EEO department asked Patterson to provide information about the credit card account balances of all her employees.

When she failed to improve her performance under the PIP, Luckie was terminated on October 4, 1999. Both Krolopp and Blake approved Patterson's decision to fire her. Luckie filed this suit on November 8, 2001. On August 21, 2003, the district court granted summary judgment in favor of Ameritech.

*Title VII Claims*

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We review the district court's grant of summary judgment *de novo*, construing all facts and reasonable inferences in the light most favorable to the non-moving party. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

*Racial Harassment*

Title VII prohibits an employer from engaging in racial harassment that creates a hostile working environment. *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 938 (7th Cir. 1996). To state a claim for a hostile work environment, Luckie must demonstrate that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004).

Luckie's allegations of harassment do not conform to the traditional hostile work environment claim in that she does not allege that she was the target of any racial slurs, epithets, or other overtly race-related behavior. *See Johnson*, 91 F.3d at 938. Nonetheless, Luckie contends that three separate incidents are evidence of a campaign of racial harassment by Patterson. Specifically, she points to: (1) Patterson's comment that she wanted to "change the complexion" of the Human Resources group; (2) Patterson calling an African-American employee a "dunce"; and (3) an e-mail sent by James Boring which complained of the effect

that Patterson's management style was having on several employees and the department as a whole.[1] None of these incidents are sufficiently connected to race so as to satisfy the second element of the hostile environment analysis. The conduct at issue must have a racial character or purpose to support a hostile work environment claim. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). Among the complained-of incidents, the only comment that arguably has a racial character is Patterson's statement regarding changing the "complexion" of the department. However, this remark was made in the context of discussing the department's organization and ways to increase its efficiency. Indeed, Luckie admits that Patterson did not overtly refer to race at all during this discussion, or at any other time. We agree that the statement reflects Patterson's plans for reorganization, and that no reasonable jury could find that it was racial in character or purpose. Accordingly, the district court correctly held that none of the incidents which Luckie cites have the required racial character and purpose to support a racial harassment claim.

Furthermore, the events at issue are not severe or pervasive, as is required to satisfy the third element of a racially hostile work environment claim. A hostile work environment must be both objectively and subjectively offensive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). To determine whether an environment is objectively hostile or offensive, the court must consider all the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work

---

[1] Luckie also claims that Patterson instructed Luckie to "watch out for those people" in reference to Wanda Raymond. The district court refused to consider this statement because it was not found anywhere in the record and therefore not based on admissible evidence. Luckie does not address this deficiency, so we likewise do not weigh the statement.

performance. *McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004). The incidents of which Luckie complains fail to satisfy this objective test. The conduct in question consists of isolated events that were not physically threatening or humiliating and in some cases were not even directed at Luckie. The evidence is insufficient to show a workplace permeated with discriminatory ridicule, intimidation, and insult. *See Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). Since Luckie fails to establish all of the elements of a hostile work environment claim, the district court properly granted summary judgment to Ameritech.

*Retaliation*

An employer may not retaliate against an employee who has complained about discrimination or other practices that violate Title VII. 42 U.S.C. § 2000e-3(a); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003). Luckie argues that Ameritech retaliated against her by placing her on a PIP and later terminating her employment because she contacted the EEO hotline to complain about Patterson and hired an attorney who sent letters to Ameritech alleging racial discrimination.

A plaintiff has two distinct ways of establishing a prima facie case for unlawful retaliation: the direct method and the indirect method. *Stone v. City of Indianapolis Public Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). In order to survive summary judgment under the direct method, Luckie must present direct evidence that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Alternatively, under the indirect method, Luckie must establish that: (1) she engaged in statutorily protected activity; (2) she was performing her job

according to Ameritech's legitimate expectations; (3) despite her satisfactory performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Williams,* 361 F.3d at 1031; *Stone*, 281 F.3d at 644.

Luckie contends that Patterson placed her on a PIP and later fired her in retaliation for her complaints to the EEO office and for hiring an attorney who sent letters to Ameritech which complained of harassment by Patterson. Luckie's claim fails under the direct method because she cannot prove a causal connection between her complaints and her termination. The key inquiry in determining whether there is a causal connection under the direct method is whether Patterson was aware of the allegations of discrimination at the time of her decisions to place Luckie on a PIP and terminate her employment; absent such knowledge, there can be no causal link between the two. *Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir. 2000). It is not sufficient that Patterson *could* or even *should* have known about Luckie's complaints; she must have had actual knowledge of the complaints for her decisions to be retaliatory. *Hayes v. Potter*, 310 F.3d 979, 982-83 (7th Cir. 2002); *Miller*, 203 F.3d at 1008 ("an employer cannot retaliate when it is unaware of any complaints"). At minimum, therefore, Luckie must offer evidence that would support a reasonable inference that Patterson was aware of Luckie's allegations of discrimination. *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994). Even in the light most favorable to her, there is simply no evidence in the record that would support such an inference. Mamie Clay has testified that she did not discuss Luckie's allegations with Patterson; in fact, she states that the two have not met or even spoken. Patterson asserts that she didn't know about Luckie's complaints at the time she made the decision to terminate her employ-

ment. Furthermore, it is the stated policy of Ameritech's EEO department to protect the confidentiality of any employee who complains about discrimination. There is nothing in the record that refutes either Clay or Patterson's statements, nor explains why Clay would deviate from the confidentiality policy of the EEO department. Similarly, there is no evidence that Patterson knew about the letters sent in September from Luckie's attorney. The sole evidence on which Luckie relies is that Deborah Ingram of Ameritech's EEO department asked Patterson for information about the credit card balance history of her employees. Notably, the credit card inquiry was regarding all of Patterson's employees, not just Luckie. As such, Patterson would have no reason to know that Ingram's request for information was in response to a claim of discrimination by Luckie, as opposed to any of her other employees. Lacking a causal connection, Luckie's claim fails under the direct method.

Proceeding to the indirect method, the district court correctly found that Luckie failed to establish a prima facie case because she was not performing her job according to Ameritech's legitimate expectations at the time she was fired. The record unambiguously reflects that Luckie had performance problems before she was placed on a PIP, and that these performance deficiencies were noted by other managers besides Patterson. Ameritech has further shown that Luckie failed to correct these problems while on the PIP. Luckie continued to miss deadlines, the quality of her work product was unacceptable, and she was often inaccessible during work hours. Luckie's only response is that she had received positive performance evaluations in the past. However, the fact that Luckie may have met expectations in the past is irrelevant; she must show that she was meeting expectations at the time of her termination. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002). By failing to establish this element of the prima

facie case, Luckie's claim cannot withstand summary judgment under the indirect analysis.

*Evidentiary Rulings*

Luckie also challenges the district court's rulings on the admissibility of two pieces of evidence. Specifically, she claims that the district court erred by refusing to strike as hearsay: (1) a portion of Patterson's affidavit pertaining to a conversation with Doug Heath, in which Heath stated that Luckie had a "toxic effect" on the department; and (2) a portion of Marvin's affidavit relating to her conversations with Patterson regarding Luckie. We review evidentiary rulings for abuse of discretion. *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1040 (7th Cir. 2003). To be entitled to relief, Luckie must show not only that the district court erred by failing to exclude evidence, but also that the erroneous ruling prejudiced her substantial rights. *Rogers v. City of Chicago*, 320 F.3d 748, 751 (7th Cir. 2003). The district court did not err in its evidentiary rulings, therefore we need not consider whether Luckie's substantial rights were affected.

Neither of the two statements at issue is hearsay because they were not offered to prove the truth of the matter asserted. FED. R. CIV. P. 801(c). Rather, each statement was offered to show Patterson's state of mind at the time she was evaluating Luckie's performance. *See, e.g.*, *EEOC v. Univ. of Chicago Hosps.*, 276 F.3d 326, 333 (7th Cir. 2002). The evidence was therefore properly considered by the district court.

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment in favor of the defendant, Ameritech.

No. 03-3442    11

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*