UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 29, 2005[*]
Decided November 29, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-1295

| | |
|---|---|
| RICHARD F. MALDONADO, <br>     *Plaintiff-Appellant*, <br><br>     *v.* <br><br> INVENSYS BUILDING SYSTEMS, INC., <br>     *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Illinois, Western Division <br><br> No. 01 C 50433 <br><br> Philip G. Reinhard, <br> *Judge*. |

**O R D E R**

Richard Maldonado appeals the district court's order granting summary judgment for his former employer, Invensys Building Systems ("Invensys"), in this employment discrimination action. Maldonado, who is Hispanic, began working at Invensys's Loves Park manufacturing facility in June 1997, and months later he was promoted to machine operator. Five times in the next six years, he unsuccessfully applied for a transfer or promotion. The most recent time,

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Maldonado sought a different machine operator position, but instead Invensys selected a white employee, Tim Gurler, reasoning that he had more experience. As a machine operator, Maldonado received positive performance reviews, but he was given a written warning once and suspended three times for using profanity and being confrontational, argumentative, and disrespectful. Maldonado suggests that the discipline had more to do with his race than any infractions on his part. He also alleges that a former supervisor, John Fox, referred to him as a "pepper-belly," insulted his predominantly Hispanic neighborhood, and characterized Invensys's diversity training as a class about "niggers and pepper-bellies." After Maldonado complained, the company investigated Fox, who was ultimately warned to avoid any discriminatory conduct. No further incidents occurred, and sometime in 1999 Maldonado was assigned to a different supervisor. In addition to Fox, a few of Maldonado's co-workers made comments that offended him.

Maldonado sued Invensys for employment discrimination based on his race and national origin, stating claims for disparate treatment, retaliation, hostile work environment, and violations of the Equal Pay Act. The district court rejected Maldonado's submitted statement of facts for failure to comply with Local Rule 56.1 and deemed admitted the facts in Invensys's statement, *see* L. R. 56.1(b)(3). As relevant to this appeal, the district court granted summary judgment for Invensys on the discrimination claim because there was no evidence that similarly situated white employees were treated any better than Maldonado with respect to promotion, pay, or discipline. The district court also found for Invensys on the hostile work environment claim, concluding that Maldonado did not experience severe or pervasive harassment and that, with respect to the co-workers, there was no basis for employer liability.

Maldonado's brief is not a model of clarity but we discern two arguments on appeal. He first contends that he made out a case of racial discrimination by establishing that Invensys repeatedly denied him a promotion in favor of a white employee. But Maldonado submitted no direct or circumstantial evidence of discriminatory intent on the part of those responsible for making promotion decisions, *see Dandy v. UPS, Inc.*, 388 F.3d 263, 272-73 (7th Cir. 2004). Nor did he make out a prima facie case of racial discrimination based on failure to promote; in particular, nothing in the record establishes that a white employee who was not better qualified was promoted instead of him. *See id.* at 273. Maldonado also vaguely alleges discrimination with respect to pay and job responsibilities, but no evidence suggests that similarly situated white employees were treated better. *See Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 300-01 (7th Cir. 2004).

Maldonado next argues that his co-workers and former supervisor created a hostile work environment by making offensive comments pertaining to his race. He points to the comments made by Fox as well as those by various co-workers who

remarked that "[t]here are white people and white trash and there are good niggers and bad niggers and there are good Mexicans and bad Mexicans," that "one of those Mexican spics" should clean up his work area, and that certain jobs were for white people only.  To the extent the comments are substantiated, Maldonado has not demonstrated that he experienced harassment severe or pervasive enough to constitute a hostile work environment.  *See Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1029 (7th Cir. 2004); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).  His co-workers' comments were infrequent, and they were not directed at him; he overheard or was told about them.  *See Luckie*, 389 F.3d at 714 (holding that no hostile work environment existed where "the conduct in question consists of isolated events that were not physically threatening or humiliating and in some cases were not even directed at [plaintiff]").  Although Fox, the former supervisor, directed one slur at Maldonado, a single utterance of an epithet, while offensive, is not sufficient to establish a hostile work environment, *see Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566-67 (7th Cir. 2004).  Fox's other two comments, which were not directed at Maldonado, do not tip the scale.  *See id.* at 567.

AFFIRMED.