NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 25, 2012
Decided May 22, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-2688

| | |
|---|---|
| KIMBERLY A. CAIN, | United States District Court for the |
| *Plaintiff-Appellant,* | Southern District of Indiana, |
| | New Albany Division. |
| *v.* | |
| | No. 4:08-cv-00008-RLY-WGH |
| GARY LOCKE, Secretary, | |
| United States Department of Commerce, | Richard L. Young, |
| *Defendant-Appellee.* | *Chief Judge*. |

**O R D E R**

Kimberly Cain filed an employment-discrimination suit against her employer, the United States Census Bureau, claiming retaliation in violation of 42 U.S.C. § 2000e-3. In response to the Census Bureau's motion for summary judgment, Cain did not provide a statement of disputed facts or submit any evidence in support of her claim. The district court granted summary judgment in favor of the Census Bureau. After reviewing the Census Bureau's evidence (including the excerpts from Cain's depositions), we find no support for Cain's retaliation claim and therefore affirm the judgment of the district court.

At summary judgment Cain ignored the statement of facts submitted by the Census Bureau, and so we credit the Census Bureau's uncontroverted version of the facts (though still presenting them in the light most favorable to Cain). *See Peretz v. Sims*, 662 F.3d 478, 480 (7th Cir. 2011); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). Cain has worked as a seasonal employee at the Jeffersonville, Indiana branch of the Census Bureau's National Processing Center since January 1998. In 2002 she submitted to the Census Bureau an administrative charge, *see Cain v. Dep't of Commerce*, EEOC Appeal No. 07A40022, 2005 WL 689308 (Mar. 18, 2005), claiming sex discrimination and retaliation. The Equal Employment Opportunity Commission, in a 2005 decision, upheld an administrative judge's finding that three male supervisors had created a work environment that was "hostile and severely abusive to female employees." *Id.* at *3. The EEOC also upheld an award of $50,000 in compensatory damages to Cain. *Id.* at *4.

The National Processing Center retains seasonal employees in nonduty status, and employees are recalled to work based on the needs of the branch and the employee's Entrance on Duty date. Cain was released from work in January 2004 while the EEOC had her case under review. She was not recalled until April 2006, and in a declaration submitted at summary judgment, the chief of human resources for the National Processing Center explains that no work was available for Cain, given her qualifications and EOD date, during the interim. The length of this layoff, he explains, is consistent with the pattern of seasonal employment at the Census Bureau for those years. When deposed during this lawsuit, Cain asserted that she knows of other employees with her same EOD date who were recalled to work in 2005, but she could not identify the jobs they were assigned and did not specify whether she also shared their qualifications.

Cain's return to work in April 2006 was for a 14-week position as a statistical clerk in the telephone unit of the Survey Processing Branch. Cain's direct supervisor was Sandra Hurst. Hurst explains, in her declaration at summary judgment, that she warned the clerks at orientation that little time was available for socializing during the workday; they were instructed to sign in and out for breaks and lunch, and to be sensitive to others in the open workspace. The clerks were not permitted to use their desk phones for personal calls, but there was an extra phone on the floor for them to use during breaks.

According to Cain, she knew all along that the telephone unit would be a hostile work environment. She knew this, she explains in her deposition, because she had a physical altercation with coworker Shirley Yarborough at a union meeting in April 2005, and Yarborough would be working with her in the telephone unit. Cain says that before returning to work, she both telephoned and visited the chief of the Employee and Labor Relations Section at the National Processing Center to complain about working with

Yarborough. While on the unit, Cain requested a one-ear headset (instead of the two-ear headset she had been issued), and it took her almost two weeks to receive it. Hurst instructed Cain's coworkers not to speak with her during the day, and Hurst and others circled around Cain's desk to monitor her phone conversations.

Within two weeks of returning to work, Cain met with David Hackbarth, the Director of the National Processing Center, to complain about her working environment. And on June 1, 2006, Cain's attorney (not her current lawyer) sent Hackbarth a similar complaint. Hackbarth opened an investigation; investigators from human resources interviewed Cain and 13 employees, concluding that their information did not support Cain's complaint of a hostile work environment. Rather, the investigators concluded that Cain herself had behaved improperly to the point of being "disruptive, rude, disrespectful, and disturbing."

As these investigations progressed, Cain's workplace issues multiplied. By her own admission, she spent considerable work time in the union office and contacting people about union matters. She admittedly made prohibited personal calls from her work phone and used the extra telephone excessively until Hurst removed it from the unit. After that clerks were allowed to use Hurst's phone or the lead clerk's phone, a privilege that Cain also abused by making calls over 20 minutes long. Hurst recounts in her declaration that when she questioned Cain about her personal calls, Cain sometimes ignored her and other times yelled at Hurst and demanded that she not listen to Cain's personal calls. Moreover, Hurst reports, Cain routinely left the work area without signing out or asking permission and returned late from breaks, despite Hurst's repeated warnings.

Several specific events led to Cain being disciplined for her behavior. On June 13, 2006, Cain used the lead clerk's phone for a personal call that lasted 20 minutes. When the lead clerk returned to her desk to resume working, Cain yelled at the clerk, yelled at Hurst, and then left the unit even though her leave request had been denied. The very next day, according to Hurst, the lead clerk overheard Cain use offensive and racist language while making a personal call on her work phone. When deposed about this incident, Cain did not deny using offensive language. Cain was issued a record of infraction on June 14, 2006, for unauthorized absences, use of her work phone for personal calls, and yelling at Hurst, but she refused to meet with Hurst to receive it. Rather, she hung up on Hurst and left the unit. On June 19 Cain was ordered to the office of Karen Blessett, chief of the branch; Cain delayed this meeting as well, slamming her desk drawers and yelling at Blessett.

That same day, Blessett placed Cain on paid nonduty status based on her disruptive behavior and its impact on the unit. For Cain's actions in response to learning about the first

record of infraction, Hurst issued Cain a second record of infraction on June 27, 2006. A supervisor outside of Cain's direct chain of command investigated the records of infraction and interviewed 15 employees. On September 2, 2006, Cain was placed on unpaid status due to a decreased workload. The National Processing Center recalled her to work as a mail-processing equipment operator in October 2006 (and she held that position through at least May 2009). As a result of the final investigation into the records of infraction, Cain was placed on ten-day suspension effective January 19, 2007.

Cain contacted the Department of Commerce's EEO office on June 5, 2006, and filed an administrative complaint on September 1, 2006. Cain requested a hearing in front of an EEOC administrative judge. But after she repeatedly failed to respond to the EEOC's discovery requests and orders to compel discovery, the administrative judge determined that Cain had forfeited her right to a hearing and remanded the case to the Department of Commerce. The Department issued its final decision without a hearing and sent a copy of the Final Agency Decision to Cain on October 10, 2007.

Cain filed the civil complaint in this case on January 11, 2008. Cain claimed that the Census Bureau had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), by employing three different means to retaliate for her prior EEO activity. She first alleged that the Census Bureau had failed to properly use her EOD date when calling her back to work, thus keeping her off the job until April 2006 when she should have been returned to work in February 2005. Second, she alleged that she was harassed and subjected to a hostile work environment. Third, she alleged that the reasons given for her ten-day suspension were pretext for retaliation.

The Census Bureau moved for summary judgment in September 2009, submitting with its motion a statement of undisputed material facts and over 500 pages of exhibits. The Census Bureau separately analyzed the three means of retaliation alleged by Cain and argued, first, that Cain could not establish any part of the prima facie case for her allegation that she was not called back to work on time. On her second theory, the Census Bureau asserted that the alleged actions of Cain's supervisors did not rise to the level of a hostile work environment, and even if they did, Cain could not link those actions to her prior EEO complaint. Finally, the Census Bureau argued that Cain failed to exhaust her administrative remedies as to the third alleged means of retaliation because she had never filed an EEO charge about the ten-day suspension. Cain filed a cursory six-page response to the motion for summary judgment. And she failed to submit a "Statement of Material Facts in Dispute," S.D. IND. L.R. 56-1(c), or any evidence to support her case or refute the Census Bureau's mountain of materials. The district court, in a two-page order, granted the

Bureau's motion for summary judgment "because Plaintiff fails to advance any facts or evidence in support of the merits of her claims."

On appeal Cain concedes that "no direct evidence is at this time available" to support her claim of retaliation, but she asserts that all she needed to do to survive the Census Bureau's motion for summary judgment was "plead sufficient facts to establish a *prima facie* case." Cain argues that the undisputed evidence that she was not performing as expected should be ignored because her supervisors—her harassers—are the sources of that evidence. Cain further argues that her own say-so about the allegedly delayed recall and her description of the conditions in the Survey Processing Branch show that she suffered an adverse action. Finally, Cain asserts without record citation that no other employees "were subjected to a hostile work environment in any way resembling" her circumstances.

Contrary to the district court's understanding, a plaintiff's failure "to advance any facts or evidence" is not reason enough to grant a defendant's motion for summary judgment; what matters is whether the moving party has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 997 (7th Cir. 1996). The court's analytical error is harmless, however, because this court's review is de novo. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 723 (7th Cir. 2011); *Teague v. Mayo*, 553 F.3d 1068, 1073 (7th Cir. 2009); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004).

Title VII prohibits discrimination in employment on the basis of race, national origin, and religion, among other categories. *See* 42 U.S.C. § 2000e-2(a); *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 303 (7th Cir. 2000). The statute also prohibits retaliation against those who oppose discriminatory conduct. 42 U.S.C. § 2000e-3(a); *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 751 (7th Cir. 2002). Cain relies exclusively on the indirect method of proof. *See Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 809 (7th Cir. 2011).

To survive summary judgment for a retaliation claim under the indirect method, a plaintiff must produce evidence that she (1) engaged in statutorily protected activity; (2) met her employer's legitimate performance expectations; (3) suffered a materially adverse action; and (4) was treated worse than similarly situated employees who did not engage in that protected activity. *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). Once the plaintiff establishes her prima facie case, the burden shifts to the defendant to establish a nonretaliatory reason for the action. *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir. 2011); *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 742 (7th Cir. 2011). The

burden then shifts back to the plaintiff to show that the defendant's proffered reason is pretextual.

Cain's first theory of retaliation—that the Census Bureau did not recall her in 2005 according to her seniority—fails because there is no evidence supporting Cain's premise that the recall was improperly delayed. Title VII's retaliation provision forbids any materially adverse action that would dissuade a reasonable employee from making a charge of discrimination even if the action does not affect the terms or conditions of employment. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67–68 (2006); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (explaining that the range of actionable adverse actions for retaliation claims under § 2000e-3 is broader than for discrimination claims under § 2000e-2). An intentionally delayed recall, had that really happened, could constitute a materially adverse action because Cain would have spent an extra year without work or pay. *See Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). But Cain produced no evidence contradicting the Census Bureau's showing that no work was available for someone of her qualifications before she was recalled in April 2006. Cain remembered hearing about other employees being recalled earlier, but she did not mention their qualifications, which is part of the decision to recall.

Cain's second theory—that subjecting her to a "hostile work environment" was the materially adverse action—fares no better. By arguing that she experienced a hostile work environment rather than asserting that specific actions independently amounted to adverse employment actions, Cain has subjected herself to a higher burden. The evidence in this case would not permit a jury to reasonably conclude that Cain suffered an objectively hostile environment. In deciding whether that threshold was crossed, courts must consider all the circumstances, including the frequency and severity of the alleged harassment, whether that harassment was humiliating or physically threatening, and whether it unreasonably interfered with the plaintiff's work performance. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004); *McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004). Cain alleged in her complaint "examples" of the harassment that purportedly created a hostile work environment: coworkers eavesdropping on her conversations, and managers forcing her to work in isolation, refusing to provide her preferred type of headset, harassing her about her interactions with the union, telling her to limit her personal phone calls, and refusing to engage in a "meaningful" investigation concerning allegations made against her. She also asserted that having contact with Shirley Yarborough created a hostile work environment: Yarborough would walk by and glare at her. But Cain's perceptions do not concern events of a threatening or humiliating nature and do not show a workplace permeated with discriminatory ridicule, intimidation, or insult. *See Vance*, 646 F.3d at 470; *Luckie*, 389 F.3d at 714.

Nor would any of this "harassment" independently meet the standard for a materially adverse action. Cain's spin on things, when translated into actual evidence from her own depositions and from other witnesses, amounts to a few "petty slights or minor annoyances that often take place at work" that would not dissuade a reasonable employee from making a charge of discrimination. *See Burlington N. & Santa Fe Ry.*, 548 U.S. at 68. For example, when Cain accuses her managers of "forcing" her to work in isolation, what she means is that she was told that the job allowed little time for on-duty socializing and not to speak with other employees while working. *See Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) (separating all employees equally is not actionable retaliation). When Cain says she was "denied" her preferred headset, what she really means is that it took two weeks for the Census Bureau to fulfill her request. And when Cain asserts that she was "harassed" about her activities with the union, what she means is that her supervisors objected to her inordinate use of work hours and facilities to lobby other members to abandon the union. What this evidence shows is that her employer expected Cain to do her job, and the fact that her supervisors may have been rude or intimidating does not elevate these incidents to the level of materially adverse actions. *See Henry v. Milwaukee Cnty.*, 539 F.3d 573, 586–87 (7th Cir. 2008).

As for Cain's final theory about the ten-day suspension, the Census Bureau correctly points out that it has been waived on appeal. Cain fails to mention her ten-day suspension in her opening brief *and* in her reply brief. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 841 (7th Cir. 2009); *Salas v. Wis. Dep't of Corrs.*, 493 F.3d 913, 924 (7th Cir. 2007).

And even if Cain's reliance on the suspension has not been waived, this discipline still would not help her retaliation claim. Though the Census Bureau has not litigated the suspension theory (it maintains that Cain failed to exhaust this theory), it did submit ample evidence to explain and justify the ten-day suspension, so this court may skip to the question of pretext. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 885 (7th Cir. 2012); *Everroad*, 604 F.3d at 478–79. Cain was disciplined twice, the first time based on her misconduct and failure to follow workplace procedures, and the second time because of her unprofessional reaction to learning that she was about to be disciplined. To demonstrate pretext, Cain was required to show that the Census Bureau did not honestly believe the reasons it gave for suspending her. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 396–97 (7th Cir. 2010). She presented no evidence that any of the Census Bureau's reasons for her suspension were lies—only vague allegations that her supervisors were conspiring against her—and so her claim would fail.

AFFIRMED.