NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 25, 2013[*]
Decided November 4, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-1930

| | |
|---|---|
| CARRESSA LOCKHART, *Plaintiff–Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 12 C 0486 |
| ST. BERNARD HOSPITAL, *Defendant–Appellee.* | Amy J. St. Eve, *Judge.* |

## O R D E R

Carressa Lockhart, a former employee of St. Bernard Hospital in Chicago,

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

appeals the grant of summary judgment against her in this employment-discrimination action, asserting among other things a hostile work environment. Because she has not offered evidence showing that the workplace incidents in question had a racial character or purpose, we affirm.

The hospital prevailed on summary judgment, so we recite the facts in the light most favorable to Lockhart, the nonmoving party. *See Vance v. Ball State Univ.*, 646 F.3d 461, 465 (7th Cir. 2011), *aff'd*, 133 S. Ct. 2434 (2013). Lockhart, an African American, worked as a monitor technician at the hospital's intermediate-care unit for about a year. As a monitor technician, she was responsible for keeping patients attached to telemetry monitors and tracking their heart rate and rhythm. Every four hours she was required to print a telestrip of a patient's heart rate and rhythm and then give that strip to the assigned nurse. If changes in the heart rate or rhythm required immediate attention, Lockhart was expected to inform the nurse. Several nurses complained, however, that Lockhart did not keep patients connected to the monitors or properly interpret the print-outs. Lockhart accused these nurses of lying and blamed them for failing to do their jobs by not re-attaching the leads in her absence. The nurses typically rebuffed Lockhart and disparaged her job performance. Lockhart's repeated complaints to supervisors about the nurses' conduct went unheeded.

The most serious incident occurred when a male nurse confronted Lockhart over her informing a supervisor of his absence. The nurse physically blocked Lockhart from her workstation. He yelled at Lockhart; she yelled back. The nurse then moved out of Lockhart's way, hitting her arm in the process. Lockhart reported this incident, and a meeting was held to investigate. A witness downplayed any physical contact between the two as accidental, and both Lockhart and the nurse received written warnings for unprofessional conduct. Lockhart believed that the nurse should have been fired and that the investigating supervisor discriminated against African Americans. But she did not tell anyone at the hospital of her suspicion that the supervisor and some of the nurses were motivated by race.

Lockhart resigned about a year after starting the job, filed a charge with the Equal Employment Opportunity Commission, received a right-to-sue letter, and sued the hospital for race-based intentional discrimination, a hostile work environment, and retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3. After discovery, one day after the deadline set by the district court, the hospital moved for summary judgment. Lockhart, however, did not object to the late filing. The court gave her 90 days to respond, and she did so.

The court then granted summary judgment to the hospital on all of the claims. With respect to the hostile-work-environment claim, the court concluded that Lockhart had failed to present any evidence that the conduct of the nurses or supervisors "had anything to do with race." The nurses' conduct may have been unprofessional, unkind, and aggressive, the court explained, but Lockhart did not show that she was the "target" of race-related behavior. The court also determined that Lockhart failed to establish a prima facie case of intentional race discrimination. The court subsequently denied Lockhart's motion to reconsider—challenging the court's willingness to consider the hospital's motion for summary judgment filed one day after the court's deadline—on grounds that Lockhart was not prejudiced by the short delay and that Lockhart did not raise the issue at the hearing at which the defendants presented their summary-judgment motion.

On appeal, Lockhart contests only the district court's ruling on her claim of a hostile work environment, pointing to evidence of the many contentious workplace encounters—the nurses' insults and complaints, the supervisors' failure to stand up for her, and the physical confrontation with the male nurse. But as the district court properly explained, a claim of a hostile work environment required Lockhart to show more than that her workplace was contentious and inhospitable; she also had to show that the conduct of the nurses and the supervisors had "a racial character or purpose." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004); *see Vance*, 646 F.3d at 470. The insults that the nurses allegedly hurled at Lockhart targeted her shortcomings as a monitor technician, not her race. Similarly, with regard to the physical encounter with the male nurse, the record does not reflect that the nurse's conduct was motivated by race; Lockhart acknowledged at her deposition that this nurse was angry because he thought that she had told the charge nurse about his absenteeism. Likewise, there is nothing to suggest a racial motive on the part of the supervisor who investigated this altercation and disciplined both Lockhart and the nurse.

Lockhart also argues that the district court abused its discretion by denying her motion to reconsider based on the hospital's untimely summary-judgment filing. But a motion under Rule 59(e) serves a limited function: "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). As the district court observed, Lockhart did not object to the late filing until after the court entered summary judgment for the hospital. This is significant because a motion under Rule 59(e) "does not allow a party to . . . advance arguments that could and should have been presented to the district court prior to the judgment." *Id.* Given district courts' broad discretion to manage their

dockets, *see Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012), the court here could not have abused its discretion by accepting the late motion, especially since Lockhart was given ample time—90 days—to respond to the hospital's motion for summary judgment.

Lockhart's final argument is that the district court erred by not considering the hostile-workplace analysis set forth in *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013), in which the D.C. Circuit reversed a grant of summary judgment on a hostile-work-environment claim. *Ayissi-Etohi*, however, not only was decided after the district court granted summary judgment, but also is distinguishable because the plaintiff there was subjected to explicit racial epithets and racially demeaning comments. *Id.* at 575.

AFFIRMED.